## WARNOCK *v.* DAVIS.

1. A person who has procured a policy of insurance on his life cannot assign it to parties who have no insurable interest in his life. *Cummack* v. *Lewis* (15 Wall. 643) cited and approved.

2. The plaintiff's intestate, on procuring an insurance upon his life, entered into an agreement with a firm, whereby the latter was to pay all fees and assessments payable to the underwriters on the policy and to receive nine tenths of the amount due thereon at his death. Pursuant to the agreement, he executed an assignment of the policy (*infra*, p. 777), and the firm paid the fees and assessments. On his death, the firm collected from the underwriters nine tenths of the amount due on the policy and his administrator sued the firm therefor. The parties to the agreement did not thereby design to perpetrate a fraud upon any one. *Held*, that the plaintiff was entitled to recover from the firm the moneys so collected with interest thereon, less the sums advanced by the firm.

ERROR to the Circuit Court of the United States for the Southern District of Ohio.

Warnock, the plaintiff, is the administrator of the estate of Henry L. Crosser, deceased, and a resident of Kentucky. Davis and the other defendants are partners, under the name of the Scioto Trust Association, of Portsmouth, Ohio, and reside in that State. On the 27th of February, 1872, Crosser applied to the Protection Life Insurance Company, of Chicago, a corporation created under the laws of Illinois, for a policy on his life to the amount of $5,000; and, on the same day, entered into the following agreement with the Scioto Trust Association : —

"This agreement, by and between Henry L. Crosser, of the first part, 27 years old, tanner by occupation, residing at town of Springville, county of Greenup, State of Kentucky, and the Scioto Trust Association, of Portsmouth, Ohio, of the second part, witnesses: Said party of the first part having this day made application to the Protection Life Insurance Company, of Chicago, Illinois, for policy on his life, limited to the amount of $5,000.00, hereby agrees to and with the Scioto Trust Association that nine-tenths of the amount due and payable on said policy at the time of the death of the party of the first part shall be the absolute property of, and be paid by, said Protection Life Insurance Company to said Scioto Trust Association, and shall by said party of the first part be assigned and

.transferred to said Scioto Trust Association, and the remaining one-tenth part thereof shall be subject to whatever disposition said party of the first part shall make thereof in his said transfer and assignment of said policy ; that the policy to be issued on said application shall be delivered to and forever held by said Scioto Trust Association, said party of the first part hereby waiving and releasing and transferring and assigning to said Scioto Trust Association all his right, title, and interest whatever in and to said policy, and the moneys due and payable thereon at the time of his death, save and except the one-tenth part of such moneys being subject to his disposition as aforesaid ; also, to keep the Scioto Trust Association constantly informed concerning his residence, post-office address, and removals ; and further, that said party of the first part shall pay to the said Scioto Trust Association a fee of $6.00 in hand on the execution and delivery of this agreement, and annual dues of $2.50, to be paid on the first of July of every year hereafter, and that in default of such payments the amounts due by him for fees or dues shall be a lien on and be deducted from his said one-tenth part.

" In consideration whereof the said Scioto Trust Association, of the second part, agrees to and with said party of the first part to keep up and maintain said life insurance at their exclusive expense, to pay all dues. fees, and assessments due and payable on said policy, and to keep said party of the first part harmless from the payment of such fees, dues, and assessments, and to procure the payment of one-tenth part of the moneys due and payable on said policy after the death of said party of the first part, when obtained from and paid by said Protection Life Insurance Company, to the party or parties entitled thereto, according to the disposition made thereof by said party of the first part in his said transfer and assignment of said policy, subject to the aforesaid lien and deduction.

" It is hereby expressly understood and agreed by and between the parties hereto, that said Scioto Trust Association do not in any manner obligate themselves to said party of the first part for the performance by said Protection Life Insurance Company of its promises or obligations contained in the policy issued on the application of said party of the first part and herein referred to.

" Witness our hands, this 27th day of February, A. D. 1872.

　　　　　　　　　　　　" H ENRY L. C ROSSER.

　　　　　　　　　　" T HE S CIOTO T RUST A SSOCIATION,

　　　　　" By A. M C F ARLAND, *President,*

　　　　　　" G EORGE D AVIS, *Treasurer.*"

The policy, bearing even date with the agreement, was issued to Crosser, and on the following day he executed to the association the following assignment : —.

"In consideration of the terms and stipulations of a certain agreement concluded by and between the undersigned and the Scioto Trust Association, of Portsmouth, Ohio, and for value received, I hereby waive and release, transfer and assign, to said Scioto Trust Association all my right, title, and interest in and to the within life insurance policy No. 3247, issued to me by the Protection Life Insurance Company, of Chicago, Illinois, and all sum or sums of money due, owing, and recoverable by virtue of said policy, save and except the one-tenth part of the same; which tenth part, after deducting therefrom the amount, if any, which I may owe to said Scioto Trust Association for fees or dues, shall be paid to Kate Crosser, or, in case of her death, to such person or persons as the law may direct. And I hereby constitute, without power of revocation on my part, the said Scioto Trust Association my attorney, with full power in their own name to collect and receipt for the whole amount due and payable on said policy at the time of my death, to keep and retain that portion thereof which is the absolute and exclusive property of said Scioto Trust Association ; to wit, nine tenths thereof, and to pay the balance, one-tenth part thereof, when thus obtained and received from the said Protection Life Insurance Company, to the party or parties entitled thereto, after first deducting therefrom, as above directed and stipulated, the amount, if any, due from me at the time of my death to said Scioto Trust Association for fees and dues.

"Witness my hand and seal, this 28th day of February, A. D. 1872.

"HENRY L. CROSSER." [SEAL.]

Crosser died on the 11th of September, 1873, and on the 16th of May, 1874, the association collected from the company the amount of the policy, namely, $5,000; one-tenth of which, $500, less certain sums due under the agreement, was paid to the widow of the deceased.

The present action is brought to recover the balance, which with interest exceeds $5,000. The defendants admit the collection of the money from the insurance company ; but, to defeat the action, rely upon the agreement mentioned, and the assignment of the policy stipulated in it. The agreement and

assignment are specifically mentioned in the second and third of the three defences set up in their answer. The first defence consists in a general allegation that Crosser assigned, in good faith and for a valuable consideration, nine tenths of the policy to the defendants; that a power of attorney was at the time executed to them to collect the remaining one tenth and pay the same over to his widow; and that after the collection of the amount they had paid the one tenth to her and taken her receipt for it.

The case was tried by the court without the intervention of a jury. On the trial, the plaintiff gave in evidence the deposition of the receiver of the insurance company, who produced from the papers in his custody the policy of insurance, the agreement and assignment mentioned, the proofs presented to the company of the death of the insured, and the receipt by the association of the insurance money. There was no other testimony offered. The court thereupon found for the defendants, to which finding the plaintiff excepted. Judgment being entered thereon in their favor, the case is brought to this court for review.

*Mr. J. B. Foraker* for the plaintiff in error.
*Mr. A. C. Thompson* for the defendants in error.

MR. JUSTICE FIELD, after stating the facts, delivered the opinion of the court, as follows: —

As seen from the statement of the case, the evidence before the court was not conflicting, and it was only necessary to meet the general allegations of the first defence. All the facts established by it are admitted in the other defences. The court could not have ruled in favor of the defendants without holding that the agreement between the deceased and the Scioto Trust Association was valid, and that the assignment transferred to it the right to nine-tenths of the money collected on the policy. For alleged error in these particulars the plaintiff asks a reversal of the judgment.

The policy executed on the life of the deceased was a valid contract, and as such was assignable by the assured to the association as security for any sums lent to him, or advanced for the premiums and assessments upon it. But it was not assignable

to the association for any other purpose.   The association had no insurable interest in the life of the deceased, and could not have taken out a policy in its own name.   Such a policy would constitute what is termed a wager policy, or a mere speculative contract upon the life of the assured, with a direct interest in its early termination.

It is not easy to define with precision what will in all cases constitute an insurable interest, so as to take the contract out of the class-of wager policies.   It may be stated generally, however, to be such an interest, arising from the relations of the party obtaining the insurance, either as creditor of or surety for the assured, or from the ties of blood or marriage to him, as will justify a reasonable expectation of advantage or benefit from the continuance of his life.   It is not necessary that the expectation of advantage or benefit should be always capable of pecuniary estimation; for a parent has an insurable interest in the life of his child, and a child in the life of his parent, a husband in the life of his wife, and a wife in the life of her husband.   The natural affection in cases of this kind is considered as more powerful — as operating more efficaciously — to protect the life of the insured than any other consideration.   But in all cases there must be a reasonable ground, founded upon the relations of the parties to each other, either pecuniary or of blood or affinity, to expect some benefit or advantage from the continuance of the life of the assured. Otherwise the contract is a mere wager, by which the party taking the policy is directly interested in the early death of the assured.   Such policies have a tendency to create a desire for the event.   They are, therefore, independently of any statute on the subject, condemned, as being against public policy.

The assignment of a policy to a party not having an insurable interest is as objectionable as the taking out of a policy in his name.   Nor is its character changed because it is for a portion merely of the insurance money.   To the extent in which the assignee stipulates for the proceeds of the policy beyond the sums advanced by him, he stands in the position of one holding a wager policy.   The law might be readily evaded, if the policy, or an interest in it, could, in consideration of paying the premiums and assessments upon it, and the promise

to pay upon the death of the assured a portion of its proceeds to his representatives, be transferred so as to entitle the assignee to retain the whole insurance money.

The question here presented has arisen, under somewhat different circumstances, in several of the State courts; and there is a conflict in their decisions. In *Franklin Life Insurance Company* v. *Hazzard*, which arose in Indiana, the policy of insurance, which was for $3,000, contained the usual provision that if the premiums were not paid at the times specified the policy would be forfeited. The second premium was not paid, and the assured, declaring that he had concluded not to keep up the policy, sold it for twenty dollars to one having no insurable interest, who took an assignment of it with the consent of the secretary of the insurance company. The assignee subsequently settled with the company for the unpaid premium. In a suit upon the policy, the Supreme Court of the State held that the assignment was void, stating that all the objections against the issuing of a policy to one upon the life of another, in whose life he has no insurable interest, exist against holding such a policy by mere purchase and assignment. "In either case," said the court, "the holder of such policy is interested in the death rather than the life of the party assured. The law ought to be, and we think it clearly is, opposed to such speculations in human life." (41 Ind. 116.) The court referred with approval to a decision of the same purport by the Supreme Court of Massachusetts, in *Stevens* v. *Warren*, 101 Mass. 564. There the question presented was whether the assignment of a policy by the assured in his lifetime, without the assent of the insurance company, conveyed any right in law or equity to the proceeds when due. The court was unanimously of opinion that it did not; holding that it was contrary not only to the terms of the contract, but contrary to the general policy of the law respecting insurance, in that it might lead to gambling or speculative contracts upon the chances of human life. The court also referred to provisions sometimes inserted in a policy expressing that it is for the benefit of another, or is payable to another than the representatives of the assured, and, after remarking that the contract in such a case might be sustained, said " that the same would

probably be held in the case of an assignment with the assent of the assurers. But if the assignee has no interest in the life of the subject which would sustain a policy to himself, the assignment would take effect only as a designation, by mutual agreement of the parties, of the person who should be entitled to receive the proceeds when due, instead of the personal representatives of the deceased. And if it should appear that the arrangement was a cover for a speculating risk, contravening the general policy of the law, it would not be sustained."

Although the agreement between the Trust Association and the assured was invalid as far as it provided for an absolute transfer of nine tenths of the proceeds of the policy upon the conditions named, it was not of that fraudulent kind with respect to which the courts regard the parties as alike culpable and refuse to interfere with the results of their action. No fraud or deception upon any one was designed by the agreement, nor did its execution involve any moral turpitude. It is one which must be treated as creating no legal right to the proceeds of the policy beyond the sums advanced upon its security; and the courts will, therefore, hold the recipient of the moneys beyond those sums to account to the representatives of the deceased. It was lawful for the association to advance to the assured the sums payable to the insurance company on the policy as they became due. It was, also, lawful for the assured to assign the policy as security for their payment. The assignment was only invalid as a transfer of the proceeds of the policy beyond what was required to refund those sums, with interest. To hold it valid for the whole proceeds would be to sanction speculative risks on human life, and encourage the evils for which wager policies are condemned.

The decisions of the New York Court of Appeals are, we are aware, opposed to this view. They hold that a valid policy of insurance effected by a person upon his own life, is assignable like an ordinary chose in -action, and that the assignee is entitled, upon the death of the assured, to the full sum payable without regard to the consideration given by him for the assignment, or to his possession of any insurable interest in the life of the assured. *St. John* v. *American*

*Mutual Life Insurance Company,* 13 N. Y. 31; *Valton v. National Loan Fund Life Assurance Company,* 20 id. 32.    In the opinion in the first case the court cite *Ashley* v. *Ashley* (3 Simons, 149) in support of its conclusions; and it must be admitted that they are sustained by many other adjudications. But if there be any sound reason for holding a policy invalid when taken out by a party who has no interest in the life of the assured, it is difficult to see why that reason is not as cogent and operative against a party taking an assignment of a policy upon the life of a person in which he has no interest.    The same ground which invalidates the one should invalidate the other — so far, at least, as to restrict the right of the assignee to the sums actually advanced by him.    In the conflict of decisions on this subject we are free to follow those which seem more fully in accord with the general policy of the law against speculative contracts upon human life.

In this conclusion we are supported by the decision in *Cammack* v. *Lewis,* 15 Wall. 643.    There a policy of life insurance for $3,000, procured by a debtor at the suggestion of a creditor to whom he owed $70, was assigned to the latter to secure the debt, upon his promise to pay the premiums, and, in case of the death of the assured, one third of the proceeds to his widow.    On the death of the assured, the assignee collected the money from the insurance company and paid to the widow $950 as her proportion after deducting certain payments made. The widow, as administratrix of the deceased's estate, subsequently sued for the balance of the money collected, and recovered judgment.    The case being brought to this court, it was held that the transaction, so far as the creditor was concerned, for the excess beyond the debt owing to him, was a wagering policy, and that the creditor, in equity and good conscience, should hold it only as security for what the debtor owed him when it was assigned, and for such advances as he might have afterwards made on account of it; and that the assignment was valid only to that extent.    This decision is in harmony with the views expressed in this opinion.

The judgment of the court below will, therefore, be reversed, and the cause remanded with direction to enter a judgment for the plaintiff for the amount collected from the insurance com-

pany, with interest, after deducting the sum already paid to the widow, and the several sums advanced by the defendants; and it is

*So ordered.*