# Richmond.

## ROLLER v. MOORE'S ADM'R.

### NOVEMBER 7th, 1889.

1. LIFE POLICY—*Insurable interest—Assignment of policy.*—Persons having no insurable interest in the life of another, can neither take out a policy nor take an assignment of a policy on the life of the latter.

2. IDEM—*Assignment of policy—Case at bar.*—Assured made assignee an assignment absolute on its face of a policy of insurance on his life. The evidence, however, showed that in former transactions about the same matter the policy was held by assignee as security for advancements made by him for premiums and assessments on the policy: *held*, the assignment was not a new contract between the parties and an absolute assignment, but it bore the impress of the original transactions, and stood merely as a security for the advances made by assignee.

Argued at Staunton. Decided at Richmond.

Appeal from decree of circuit court of Rockingham county, rendered August 1, 1887, in a chancery suit in the style of Herod Homan and others against James H. Moore's Administrator and others upon an original bill, and James H. Moore's Administrator against John E. Roller upon a cross bill. The decree being adverse to John E. Roller, he appealed. Opinion states the case.

*Strayer & Liggatt* and *Geo. M. Cochran, Jr.,* for the appellant.

*Sipe & Harris* and *W. B. Compton,* for the appellee.

LACY, J., delivered the opinion of the court.

The case is as follows: James H. Moore having died, the appellee, Herod Homan, filed a creditors' bill against the appellee, D. M. Beane, his administrator, his widow and heirs, to have an account of the debts, and to subject the real and personal assets to the payment of the debts. The administrator (Beane) answered and claimed that among the assets of the decedent (Moore) was a policy of insurance for $5,000 in the Equitable life assurance society of the United States, which had been collected by the appellant, John E. Roller, under an alleged assignment, asking that the answer be treated as a cross bill, and that said Roller be made a party defendant and required to answer, the oath being waived. And it is concerning this policy of insurance that this controversy is before this court. The administrator of Moore claims that the assignment of Moore, although absolute on its face, was intended to be only conditional, and that the interest of Roller was confined to the four premiums, which he had paid quarterly, of $62.50 each, and $1 fee. The policy was taken out by Moore with Messrs. Lupton Bros., general agents of the company at Harrisonburg, the county seat of Rockingham county; but, not having the money to pay the premium, he gave his note to Lupton Bros. for $63.50—the premium ($62.50) and $1 fee. This note Lupton Bros. carried to Roller and sold at 20 per cent. discount, and handed the policy, made out in the name of Moore, to Roller as a further security for the debt of Moore for $63.50. This policy and note of Moore were carried to Roller because Lupton knew that Roller had business transactions with Moore. This transaction, in its origin, was simply the purchase by Roller of the note of Moore at 20 per cent. discount, and the holding of the policy as collateral security. Moore failing to pay the note, Roller began to press him for the money, and then to insist upon an assignment of the policy, drawing up a paper to that effect, and authorizing Roller to collect the policy with the proviso: "Provided, that in the mean time this assignment and power be not cancelled and annulled." Moore held

but did not execute this paper, this paper being dated March 31, 1884. On the 10th of June following, Roller wrote to Moore a letter urging the matter, and referring to the paper of March 31, 1884, thus: "I sent you a paper showing the contract under which I paid the first premium for you; that is, that as long as I paid the premiums the policy was to be mine, and you were to assign it to me." The second quarterly premium was due on the 10th of June. Lupton, the agent, not hearing from Moore about it, collected it of Roller, and Moore, not noticing the agent, paid the premium directly to the company in New York, and Lupton received the company's receipt for it. In the mean time Moore, on the 12th of May, had applied for a second policy of $5,000 in the same company, and Lupton applied the receipt for the premium paid by Moore on the first policy to the first premium on this second policy, and had it issued, he having received payment of Roller of the second premium on the first policy, as stated. After this, Roller wrote the letter referred to of that date, saying further as to the paper of March 31st: "You have never returned that paper to me. I do not like that way of doing business, and write now to say that it must be attended to at once. You must not fail to attend to this at once." On the 27th of June following, Roller sent an absolute assignment to Moore, without any proviso. This not being replied to by Moore, Roller wrote again on the 4th of August: "You have never signed that assignment to me of that insurance policy. It must be done without delay. You are not treating me right in this matter." On the 10th of September Roller paid the third premium, and on the 12th of August the second policy lapsed, and on the 20th of September following Roller obtained the assignment of the policy, which is absolute in its terms. Roller paid the fourth premium, and on the 12th of February following Moore died, and on the 25th of May Roller collected the policy, and claims it as his own.

The circuit court held that the assignment was not a new

contract on the 20th of September between the parties, and an absolute assignment, but that it bore the impress of the original transactions, and stood merely as a security for the advances made by Roller; and, following the case of *Page* v. *Burnstine*, 102 U. S., 664, required Roller to account to the administrator of Moore for the policy, after deducting the premiums paid by him. And also, as this policy made Moore's estate solvent, Roller was allowed to retain another debt which Moore's estate owed him, all the debts of Moore being amply provided for. From this decree Roller appealed. He insists that under the assignment the policy was his, and that it vested in him the absolute ownership; that he had, as the creditor of Moore, an insurable interest in his life and that the policy was not, therefore, a wager policy. The case of *Page* v. *Burnstine, supra,* relied on by the circuit court, and followed in its decision, is very similar to this case. From the opinion in that case, we find that the transactions between Page and Burnstine had their origin in a loan of money by Burnstine to Page. To secure that loan, an assignment was made of Page's interest in the policy to the extent of the sum borrowed. Each subsequent assignment showed upon its face a similar arrangement until that of January 7, 1873, was executed. The latter assignment by itself imputed an absolute transfer to Burnstine of all the right, title, and interest of the assured in the policy, and to the payments made therefor, and all benefits and advantages to be derived therefrom. "But," says the opinion, "the circumstances disclosed in the record indicate with reasonable certainty, that the real and only object of the execution of the assignment of January 7, 1873, was to invest Burnstine with the entire control of the policy, to the end that thereafter the company might deal directly with him, and, upon the death of the assured, that he might be invested with full authority to receive the proceeds of the policy, and apply them in repayment of such sum or sums as he had loaned to Page upon the security of the policy. In other words, the last assignment

may be construed as simply appointing Burnstine, upon the death of the assured, to receive from the company, such sum as would then be due on the policy, and, after reimbursing himself to the extent of his loan to Page, to pay the balance to the persons entitled thereto. A different construction of that instrument would place Burnstine in the position of being pecuniarily interested in the death of Page. Unless compelled to do so, we should not suppose that he had any desire or purpose to speculate upon the life of Page, or to do more than secure the repayment of the money actually loaned by him to the assured." It is certainly true in this case, if not conceded, that the original assignment prepared by Roller was an absolute assignment, and authorizes Roller to collect the policy with the proviso—"provided, that in the mean time, this assignment and power be not canceled and annulled." This was all that Roller asked at first. In the 10th of June note, as stated, Roller claimed that this was the original agreement, as he believed, saying: "I sent you a paper showing the contract under which I paid the first premium for you; that is, as long as I paid the premium the policy was to be mine, and you were to assign it to me." Subsequently, Roller, in a personal interview, procured an assignment absolute on its face. The circuit court held that this assignment bore the impress of the original transaction, and stood merely as a security for the advances made by Roller.

If the assignment was absolute, as it appeared upon its face to be, and was so intended to operate between the parties, we must consider whether Roller held such an insurable interest in the life of Moore as would render such an assignment valid. The policy as taken out by Moore, was a valid contract, and as such was assignable by the assured to Roller as security for any sums lent to him or advanced for the premium and assessments upon it. But was it assignable to Roller for any other purpose? As was said by Mr. Justice Field in a similar case, (*Warnock* v. *Davis*, 104 U. S., 779:) "Ths association had no insurable

interest in the life of the deceased, and could not have taken out a policy in its own name. Such a policy would constitute what it termed a ' wager policy,' or a mere speculative contract upon the life of the assured, with a direct interest in its early termination. It is not easy to define with precision what will, in all cases, constitute an insurable interest. * * * It may be stated generally, however, to be such an interest arising from the relations of the party obtaining the insurance, either as creditor of, or surety for the assured, or from the ties of blood or marriage to him, as will justify a reasonable expectation of advantage or benefit from the continuance of his life. It is not necessary that the expectation of advantage or benefit should be always capable of pecuniary estimation, for a parent has an insurable interest in the life of his child, and a child in the life of his parent; a husband in the life of his wife, and a wife in the life of her husband. The natural affection in cases of this kind is considered as more powerful—as operating more effica-ciously—to protect the life of the insured than any other con-sideration. But in all cases there must be a reasonable ground, founded upon the relations of the parties to each other, either pecuniary, or of blood, or affinity, to expect some benefit or advantage from the continuance of the life of the assured." The foregoing was approved in the subsequent case of *Conn. Mut. Life Ins. Co.* v. *Luchs*, 108 U. S., 503, and again in *N. Y. Mut. Life Ins. Co.* v. *Armstrong*, 117 U. S., 597, the same learned justice saying in that case, as to an assignment: "A policy of life insurance, without restrictive words, is assignable by the assured for a valuable consideration equally with any other chose in action, when the assignment is not made to cover a mere speculative risk, and thus evade the law against wager policies, and payment thereof may be enforced for the benefit of the assignee." The assignment of a policy, however, to a party not having an insurable interest, is as objectionable as the taking out of a policy in his name. To the extent in which the assignee stipulates for the proceeds of the policy beyond

the sums advanced by him, he stands in the position of one holding a wager policy. The law might be readily evaded if the policy, or an interest in it, could, in consideration of paying the premiums and assessments upon it, and the promise to pay upon the death of the assured a portion of its proceeds to his representatives, be transferred so as to entitle the assignee to retain the whole insurance money. *Warnock* v. *Davis, supra, Franklin Life Ins. Co.* v. *Hazzard,* 41 Ind., 116; *Stevens* v. *Warren,* 101 Mass., 564; *Cammack* v. *Lewis,* 15 Wall., 643; *Cooper* v. *Shœffer,* 11 Atl. Rep., 548; *Corson's Appeal,* 113 Pa. St. 348, 6 Atl. Rep., 213; *Cooper* v. *Weaver's Adm'r,* 11 Atl. Rep., 780; *Lamont* v. *Hotel Men Mut. Ben. Association,* 30 Fed. Rep., 817; *Batdorf* v. *Fehler,* 9 Atl. Rep., 468; *Shugar* v. *Garman,* 4 Atl. Rep., 60; *Ruth* v. *Katterman,* 3. Atl. Rep., 835, and note; *Price* v. *Knights of Honor,* 4 S. W. Rep., 633; *Missouri Valley Life Ins. Co.* v. *McCrum,* 12 Pac. Rep., 517, and cases cited.

While the foregoing is in accordance with the weight of authority, the decisions are not uniform, and we are referred to numerous decisions to the contrary as to assigned policies (*St. John* v. *Am. Mut. Life Insurance Co.,* 13 N. Y., 31; *Valton* v. *National Loan Fund Life Assurance Co.,* 20 N. Y., 32; *Ashley* v. *Ashley,* 3 Sim., 149); the New York court of appeals holding that a valid policy of insurance effected by a person upon his own life is assignable like an ordinary chose in action, and that the assignee is entitled, upon the death of the assured, to the full sum payable, without regard to the consideration given by him for the assignment, or to his possession of any insurable interest in the life of the assured. But we are of opinion to follow the decisions on this subject of the supreme court of the United States, and those of other courts in accord therewith; and we are of opinion that, if there be any sound reason for holding a policy invalid when taken out by a party who has no interest in the life of the assured (which will not be denied), it is difficult to see why that reason is not as cogent and operative against a party taking an assignment of

a policy upon the life of a person in which he has no interest. The same ground which should invalidate the one should invalidate the other, so far, at least, as to restrict the right of the assignee to the sums actually advanced by him. In the conflict of decisions on this subject, we are free to follow those which seem more fully in accord with the general policy of the law against speculative contracts upon human life. Justice Field in *Warnock* v. *Davis, supra.* Of the dangerous and pernicious tendencies of such policies, where one person is enabled to hold a money interest in the death of another, and, for gain, to desire and bring about the death of another by felonious means, is forcibly illustrated by the case of *N. Y. Mut. Life Insurance Co.* v. *Armstrong, supra,* where Hunter induced his friend Armstrong to insure his life in his own name and assign the policy to him, and within six weeks waylaid him on the highway at night, and slew him with blows inflicted from behind, for which he was afterwards hanged.

The decision of the circuit court is, we think, without error. The transactions between the parties were rightly considered as a whole, each supporting the other; but, if the assignment is absolute in the first place, the decree is still right, because Roller had no greater insurable interest in the life of the assured than is decreed him.

The decree of the circuit court of Rockingham, appealed from here, must therefore, be affirmed.

DECREE AFFIRMED.