# Richmond

## H. Raymond Smith, et als. v. S. B. Coleman, et als.*

January 15, 1945.

Record No. 2837.

Present, All the Justices.

*A rehearing was pending in this case at the time of the publication of this volume. For decision on rehearing, see 184 Virginia.—Reporter's Note.

The opinion states the case.

*George E. Allen* and *Ammon G. Dunton*, for the appellants.

*C. O'Conor Goolrick*, for the appellees.

CAMPBELL, C. J., delivered the opinion of the court.

On September 11, 1941, S. B. Coleman and Bessie U. Heflin, executor and executrix of the estate of E. G. Heflin, deceased, instituted a general creditors' suit against the Farmers and Merchants State Bank of Fredericksburg and others, for the administration of the estate of E. G. Heflin, deceased. On the 11th day of April, 1942, appellants, H. Raymond Smith and Maria Brewington Bussells, Executors of the estate of Ruby S. Burton, deceased, filed their petition in this creditors' suit, to recover from the estate of E. G. Heflin, deceased, the principal sum of $16,191.40.

To this petition appellees filed an answer, denying affirmative relief, and seeking to recover the sum of $8,563.35, which they alleged had been wrongfully paid Ruby S. Burton during her lifetime by the Farmers and Merchants State Bank, when it should have been paid to the personal representatives of the estate of E. G. Heflin, deceased.

Issue was joined upon the petition and answer, and the cause submitted to the chancellor upon an agreed statement of facts.

On October 1, 1943, the court entered a decree adjudging that appellants were not entitled to recover the amount claimed in their petition to be due them by the estate of E. G. Heflin, deceased, but that appellees were entitled to recover from appellants, as executors of the estate of Ruby S. Burton, deceased, the sum of $8,563.35, with interest thereon from November 7, 1941, until paid. From that decree this appeal was allowed.

The pertinent facts set forth in an agreed stipulation are as follows:

"Elmer G. Heflin, a resident of the City of Fredericksburg, died on July 13, 1941. In 1924 he insured his life with the Northwestern Mutual Life Insurance Company of Milwaukee, Wisconsin, under two policies, one, in the sum of $75,000.00, and the other, in the sum of $25,000.00. Bessie U. Heflin, his sister, was named as beneficiary in both policies. *All of the premiums on both policies were paid by him.* Both policies contained provisions permitting him to change the beneficiary without the consent of such beneficiary. At the time he took out the policies he was married to Laura K. Heflin, and the marriage status continued to the date of his death, but they were not living together at that time, having separated a number of years prior thereto. On August 1, 1934, he changed the beneficiary in the $25,000.00 policy from Bessie U. Heflin to Ruby S. Burton.

"On March 12, 1941, he became indebted to the Farmers & Merchants State Bank of Fredericksburg, and assigned both of the policies to the bank as collateral security for the payment of his indebtedness. He also deposited with the

bank, as additional collateral security for the payment of his indebtedness, $10,000.00 in notes, secured by a first deed of trust on real estate at Fredericksburg. After the death of Heflin the bank collected $75,359.75, under the $75,000.-00 policy, and $24,765.75 under the $25,000.00 policy, in which Ruby S. Burton was named as beneficiary. The indebtedness of Heflin to the bank at that time amounted to $65,482.01. The bank proceeded to use the proceeds of the two insurance policies to liquidate this indebtedness, taking $49,290.61 from the proceeds of the policy in which Bessie U. Heflin was beneficiary, and $16,191.40 from the proceeds of the policy in which Ruby S. Heflin was beneficiary. The balance of $8,563.35 collected on the $25,000.00 policy, in which Ruby S. Burton was beneficiary, was paid by the bank to Ruby S. Burton.

"After thus liquidating the indebtedness of Elmer G. Heflin, the bank delivered to the executors of the estate of Elmer G. Heflin the $10,000.00 of first deed of trust notes which it held as additional collateral security for the payment of Heflin's indebtedness. The bank likewise delivered to the executors of Heflin's estate the notes evidencing the debt of Heflin to the bank, which was secured by the policies and the real estate notes. The delivery of the first deed of trust notes and the notes evidencing the indebtedness of Heflin to the bank was made without the consent of Ruby S. Burton.

"On January 29, 1942, Ruby S. Burton died. She was not related to Elmer G. Heflin in any way and he was not indebted to her. At the time of her death she was, and for a long time prior thereto had been employed by the Stratford Hotel, Incorporated, Fredericksburg, Virginia, in an executive capacity, at a substantial salary in connection with the operation of the hotel. Heflin owned a controlling interest in the hotel; was operating it at the time of his death and had been operating it for many years prior thereto. Ruby S. Burton had been a faithful employee and he showed great interest in her welfare.

"Ruby S. Burton executed the assignment, assigning the

$25,000.00 policy as collateral security for the payment of Heflin's indebtedness to the bank, but she was not in any way obligated to pay the debt. Heflin left an estate of more than $100,000.00 in value after the payment of taxes, costs of administration and all debts, including the sum of $65,482.01, owing to the bank. He left a will by which he made due provision for his wife, Laura K. Heflin, and devised and bequeathed the remainder of his estate, in fee simple, to his sister, Bessie U. Heflin."

It is alleged that the trial court erred in the following particulars:

(1) "In holding that the designation of Ruby S. Burton in the policy in question was void for the want of an insurable interest on the part of Ruby S. Burton in the life of E. G. Heflin;" and (2) "in denying to the executors of Ruby S. Burton the right of subrogation in relation to the rights of the creditor with whom Heflin had pledged the policy as collateral security for the payment of a debt."

In *Crismond* v. *Jones*, 117 Va. 34, 37, 83 S. E. 1045, Ann. Cas. 1917C, 155, this court approved the doctrine of an insurable interest as defined by Mr. Justice Field in *Warnock* v. *Davis*, 104 U. S. 775, 26 L. Ed. 924. In that case this is said: "It is not easy to define with precision what will in all cases constitute an insurable interest, so as to take the contract out of the class of wager policies. It may be stated generally, however, to be such an interest arising from the relations of the party obtaining the insurance, either as creditor or of surety for the assured, or from the ties of blood or marriage to him, as will justify a reasonable expectation or advantage or benefit from the continuance of his life."

While the petition and brief deal extensively with the question of an assignment of a life insurance policy, we are of opinion that no question of an assignment is involved in the decision of the case, for the reason that since the enactment of section 5767 (Michie's Code), Acts 1902-3-4, p. 256, the validity of an assignment of a life insurance policy has been definitely determined. That section is as follows:

"A policy of insurance on life, taken out by the insured himself, or by a person having an insurable interest in his life, in good faith and not for the mere purpose of assignment, may be lawfully assigned to anyone, for a valuable consideration, as any other chose in action, without regard to whether the assignee has an insurable interest in the life of the insured or not, and the assignee may recover upon it whatever the insured might have recovered but for such assignment."

Since the decision of this court in *Roller* v. *Moore*, 86 Va. 512, 10 S. E. 241, 6 L. R. A. 136, which was handed down in 1889, the settled doctrine in this Commonwealth has been, as stated in the recent case of *Green* v. *Southwestern Voluntary Ass'n*, 179 Va. 779, 20 S. E. (2d) 694, as follows: "In this State it has long been held that in the absence of an insurable interest, a policy on the life of another is contrary to public policy, and cannot be enforced by the beneficiary. The lack of insurable interest causes the transaction to be regarded as a speculative or wager contract." This doctrine has also been reaffirmed in the case of *Fulcher* v. *Parker*, 169 Va. 479, 194 S. E. 714.

The determinative question involved in the first assignment of error, therefore, is: Did Ruby S. Burton have an insurable interest in the life of the insured, E. G. Heflin?

It is conceded that Mrs. Burton was not related to Heflin by consanguinity or affinity. He was not indebted to her either legally or morally. The mere fact that she was an employee of a corporation in which he owned stock imposed no legal obligation whatever upon him to insure his life for her benefit. In the petition it is argued: "The personal relations between them were such that she had a reasonable right to expect some pecuniary advantage from the continuance of his life and to fear loss from his death." What that relation was is not disclosed by the record. Whether platonic or otherwise, it would be going far afield to say that in view of the conceded facts, it would

furnish a reasonable basis upon which to found an insurable interest in the life of Heflin.

This view is fortified by the decision in *Slade* v. *Life, etc., Ins. Co.,* 202 N. C. 315, 162 S. E. 734, in which the following quotation from *Trinity College* v. *Travelers' Ins. Co.,* 113 N. C. 244, 18 S. E. 175, 22 L. R. A. 291, is approved:

" * * * except in cases where there are ties of blood or marriage, the expectation of advantage from the continuance of the life of the insured, in order to be reasonable, as the law counts reasonableness, must be founded in the existence of some contract between the person whose life is insured and the beneficiary, the fulfillment of which the death will prevent. It must appear that by the death there may be damage which can be estimated by some rule of law for which loss or damage the insurance company has undertaken to indemnify the beneficiary under its policy. Where this contractual relation does not exist, and there are no ties of blood or marriage, an insurance policy becomes what the law denominates a wagering contract, and * * * must be declared illegal and void, * * * ."

That Mrs. Burton did not suffer any damage arising out of her employment by reason of the death of Heflin on July 13, 1941, is shown by the fact that she continued as an employee of the hotel corporation until her death which occurred July 29, 1942.

Though there is respectable authority to the contrary, the rule that before recovery can be had on the policy of insurance a named beneficiary must have an insurable interest in the life of the insured is so firmly embedded in our jurisprudence that only legislative enactment can uproot it. For more than a half century the rule has been in existence and during that period the Legislature has seen fit to modify the rule in one particular, viz, the enactment of section 5767 of the Code, *supra.*

The language of Judge Moncure in *Gordon* v. *Cannon,* 18 Gratt. (59 Va.) 387, is applicable: "Whether the doctrine

be sound in its origin or not, it ought to govern our courts until otherwise provided by the legislature."

In *Postal Tel. Cable Co. v. Farmville, etc., R. Co.*, 96 Va. 661, 662, 32 S. E. 468, Judge Keith said:

"The rule of *stare decisis* is entitled to the greatest respect, and under our system of jurisprudence is an essential feature of the administration of justice. Where a decision, and especially a line of decisions, has been acquiesced in, where it has been followed in other cases and has become a rule of property, and men have, in the conduct of affairs, learned to respect and conform to it, it becomes of especial, and indeed of binding, force, and should not be disturbed, except by the interposition of legislative power."

Before concluding this phase of the case, it is well to advert to the contention of appellants, that since Heflin had an insurable interest in his own life, he had the lawful right to insure his own life and to designate any person as beneficiary under the policy, whether the designated beneficiary had an insurable interest in his life or not. This contention is untenable.

In *Roller v. Moore, supra*, we said: "The assignment of a policy, however, to a party not having an insurable interest, is as objectionable as the taking out of a policy in his name."

To the same effect is the decision in *Tate v. Commercial Bldg. Ass'n*, 97 Va. 74, 33 S. E. 382, 75 Am. St. Rep. 770, 45 L. R. A. 243.

If Ruby S. Burton were living, the equitable argument advanced might be of some force, but there are no equities as far as she is concerned. If appellants should prevail in this litigation, the beneficiary is not one whom Heflin sought to favor, but a stranger to whom he owed no obligation, either moral, legal or pecuniary. Any equitable consideration, therefore, is non-existent.

To sustain the first assignment of error would be to permit those who have not sown to reap a bountiful financial harvest.

The contention that only the insurance company can raise the question of insurable interest is without merit.

Whatever the rule elsewhere, in Virginia the prevailing rule has been that any interested party may raise the question. *Tate* v. *Commercial Bldg. Ass'n, supra,* and *Roller* v. *Moore, supra.*

■■ The claim that appellants are subrogated to the rights of the Farmers and Merchants State Bank, with whom Heflin had pledged the insurance policy as collateral for the payment of the debt due, is also without merit.

In *Morgan* v. *Gollehon,* 153 Va. 246, 149 S. E. 485, Prentis, C. J., defines the status of subrogees and divides them into three classes, as follows: "First, those who act in the performance of a legal duty arising either by express agreement or by operation of law, and the most conspicuous example of this class is the ordinary surety who, in discharge of his legal duty, pays his principal's debt. In the second class are those who are not legally bound to pay the debt, but who might suffer loss if the obligation is not discharged, and who act under the necessity of self-protection, * * * *. The third class are those who are strangers to the obligation, who act neither under compulsion nor self-protection, but at the request of some person liable for the debt."

Mrs. Burton did not come within either of the three classes. She did not endorse the notes of Heflin; she was in law a stranger to the transaction and in no sense liable for the debt due.

Since we have held that Mrs. Burton had no insurable interest in the policy held by the bank, it follows that neither she nor her property paid the loan.

The decree of the trial court is without error and is, therefore, affirmed.

*Affirmed.*

Hudgins, J., dissenting.

This record presents to this court for the first time the precise question—whether a person may purchase and pay the full contract price for an insurance policy on his own life

for the benefit of another who has no insurable interest therein.

All the Virginia cases cited in the majority opinion deal with the question of the assignment of an insurance policy or else the facts show that the beneficiaries paid the premiums on the contracts of insurance on the lives of the insured. The facts of this case are distinguishable from those of any of the former cases, hence the doctrine of *stare decisis* does not control.

A voluntary assignment of a life insurance policy is regarded as a speculative or wagering contract because the life and name of the insured are used by another (having no insurable interest in the life of the insured) for speculative or wagering purposes. It is declared that this gives to such a beneficiary a financial interest in the destruction of the life of the insured and tends to foster crime. However, the speculative or wagering feature is eliminated when the insured himself buys and pays the full purchase price for the insurance policy.

In 29 Am. Jur., at page 312, the applicable doctrine is concisely stated as follows: "There is a very definite distinction between the questions as to the insurable interest of one taking out a policy on the life of another and as to the right of one to take out a policy on his own life for the benefit of another. The general rule is that every person has an insurable interest in his own life and may insure it for the benefit of his estate, and may also, in the absence of statute, insure it in good faith for the benefit of any person whom he sees fit to name as the beneficiary, regardless of whether such person has an insurable interest in his life. The doctrine is based upon the theory that it is not reasonable to suppose that a person will insure his own life for the benefit of another for the purpose of speculation, or be tempted to take his own life in order to secure the payment of money to another, or designate as the beneficiary a person interested in the destruction, and not in the continuance, of his life."

The evidence discloses that Elmer G. Heflin caused his

own life to be insured in 1924 and named Ruby S. Burton as the beneficiary. He paid the annual premiums on this policy until his death in 1941. Under these circumstances, it is pure fiction to hold that Ruby S. Burton must collect the amount stated in the policy from the insurance company and hold it as trustee for the residuary legatees of Heflin's estate. The amount of such policy was as much the property of the insured as any other estate owned by him at the time of his death. A person should have the same right to designate the beneficiary in such a policy as he has to bequeath or devise his other assets. This opinion is supported by the overwhelming weight of authority and has the most logical appeal.

For these reasons I am constrained to dissent from views expressed in the majority opinion.

BROWNING, J., concurs in this dissent.