# Staunton

## H. Raymond Smith, et al., Etc. v. S. B. Coleman, et al., Etc.

September 5, 1945.

Record No. 2837.

Present, All the· Justices.

### Upon A Rehearing.

The opinion states the case.

*George E. Allen* and *Ammon G. Dunton*, for the appellants.

*C. O'Conor Goolrick*, for the appellees.

HUDGINS, J., delivered the opinion of the court.

Elmer G. Heflin, who was engaged in many business enterprises in and near the city of Fredericksburg, Virginia, purchased $100,000 insurance on his life from the Northwestern Mutual Life Insurance Company of Milwaukee, Wisconsin. This insurance was evidenced by two policies, each dated March 18, 1924, one for $25,000 and the other for $75,000. Both named Bessie U. Heflin, his sister, as the beneficiary. On August 1, 1934, Heflin exercised the right reserved in the insurance contract by changing the name of the beneficiary in the $25,000 policy from Bessie U. Heflin to Ruby S. Burton. Heflin was indebted to several parties. Among them was the Northwestern Mutual Life Insurance Company, from whom he had borrowed $5,311 on the smaller policy. Later he borrowed $65,000 from the Farmers and Merchants State Bank of Fredericksburg and paid his other creditors, including the Northwestern Mutual Life Insurance Company. To secure the $65,000 note, Heflin assigned, as collateral, first mortgage bonds valued at $10,000 and the two policies on his life. Ruby S. Burton and Bessie U. Heflin, the beneficiaries in the policies, joined in the assignment of the respective policies. Heflin continued to pay the premiums on the policies until his death on July 13, 1941. Most of his estate, appraised at more than $200,000, was bequeathed and devised to his sister, Bessie U. Heflin.

The Farmers and Merchants State Bank collected the face value of the two insurance policies, deducted the amount of its debt *pro rata* from the proceeds, paid to Bessie U. Heflin $26,069.14 on the $75,000 policy, paid to Ruby S. Burton $8,563.35 on the $25,000 policy, and delivered the first

mortgage bonds valued at $10,000 to the executors of the Heflin estate.

Ruby S. Burton died testate. Her executors filed a petition in a pending suit (to wind up and distribute the Heflin estate) alleging that the Burton estate was entitled to recover from the Heflin estate $16,191.40, the difference between the amount paid Ruby S. Burton and the face value of the insurance policy in which she was named beneficiary. The executors of the Heflin estate answered this petition with a counterclaim alleging that, since Ruby S. Burton had no insurable interest in the life of Elmer G. Heflin, the Heflin estate was entitled to recover from the Burton estate the $8,563.35 paid by the bank to Ruby S. Burton on the $25,000 policy.

The trial court entered a decree declaring that Ruby S. Burton had no insurable interest in the life of the insured and that the Heflin estate was entitled to recover the amount paid by the bank to her. From that decree this appeal was allowed.

The first question presented is whether a person may purchase and pay the full contract price for an insurance policy on his own life for the benefit of another who has no insurable interest in such life.

This court has never passed upon this precise question. There are expressions in several Virginia cases which indicate that a beneficiary who has no insurable interest in the life of the insured would not be entitled to the proceeds of the policy on the death of the insured.

Such expressions, as *dicta*, appear in Roller v. Moore, 86 Va. 512, 10 S. E. 241, 6 L. R. A. 136. In a creditor's suit in which James E. Roller was made a party, the facts were that James H. Moore purchased a $5,000 insurance policy on his life in the Equitable Life Insurance Society. In payment of the first premium he executed a note for $63.50 payable to Lupton Bros., agents for the insurance company. The payees sold this note to James E. Roller and, at the same time, delivered him the insurance policy on Moore's life. Moore failed to pay the note at maturity. Roller insisted

on payment or an assignment of the policy containing the proviso: "Provided, that in the mean time this assignment and power be not cancelled and annulled." When the second quarterly payment became due, Moore paid the premium directly to the insurance company and Lupton collected the same amount from Roller. Roller also paid the third quarterly payment. Thereafter he secured an absolute assignment of the policy without the proviso and made another payment to the insurance company. On Moore's death Roller claimed and collected the entire proceeds of the policy. It was held that the original transaction established the fact that the policy was retained by the assignee as security for the advancement made by him to the company for payments of premiums and assessments, and that the absolute assignment was not a new contract between the parties but stood merely as security for the amount of the advances made by the assignee. After so deciding, the court, by way of *dicta*, stated that, even if the parties intended for the assignment to be absolute, such an assignment would be invalid because Roller had no insurable interest in the life of the insured, and that he could neither take out a policy nor take an assignment of a policy on Moore's life. This reasoning was based on the opinion in *Warnock* v. *Davis*, 104 U. S. 775, 26 L. Ed. 924, and other cases decided by the Supreme Court of the United States.

The facts in *Tate* v. *Commercial Bldg. Ass'n*, 97 Va. 74, 33 S. E. 382, 75 Am. St. Rep. 770, 45 L. R. A. 243, were that the Maryland Life Insurance Company agreed to lend the Commercial Building Association $12,000, on condition that the association secure the payment of the loan by a deed of trust on certain lots and take out insurance policies totaling $20,000 on three of its youngest members, W. H. Wrenn, B. E. Hughes and J. D. Tate. All the terms of the agreement were fulfilled except that the three parties took out insurance on their lives for their own benefit, and not for the benefit of the association, and assigned the policies to the insurance company as collateral security for the payment of the loan. Wrenn later made a second assign-

ment of his policy to J. D. Tate. The premiums on the three insurance policies were paid by the building association. On Wrenn's death the proceeds of the policy on his life were applied by the insurance company on the payment of the debt due it by the association. Tate, as assignee, instituted a suit to recover from the association the amount of the policy less the amount of premiums paid thereon during the life of Wrenn. The court, basing its decision on *Roller* v. *Moore, supra,* held: "An assignee of a policy having no insurable interest in the life of the insured can only retain so much of the proceeds, where the insurance was lawfully effected, as is necessary to reimburse him for premiums paid, expenses incurred, and interest thereon. * * * *A fortiore,* the Association, having no insurable interest in the life of Wrenn, could not occupy any better position, if he had carried out the unlawful agreement and insured his life for its benefit instead of his own."

The opinion in the *Tate Case* was published in 1899. In 1903, the holdings in the *Tate* and *Roller Cases* were modified by statute (Acts of 1902-3-4, Ex. Sess., p. 256; now Code of 1942 (Michie), sec. 5767) to the extent that the assignment of a life insurance policy for a valuable consideration to one having no insurable interest in the life of the insured is valid if made in good faith and not for the purpose of assignment.

In *Crismond* v. *Jones,* 117 Va. 34, 83 S. E. 1045, Ann. Cas. 1917C, 155, it appeared that John T. Coleman assigned two policies on his life, totaling $3,000, to his son, W. J. Coleman, and his son-in-law, H. F. Crismond, in consideration of their assuming the payment of the premiums and assessments to become due and payable under the terms of the policies. It was held that W. J. Coleman, the son, had an insurable interest in the life of his father, and that the assignment to him was valid; but that H. F. Crismond had no insurable interest in his father-in-law's life and that the assignment as to him was invalid. The rights of the parties had become vested before the enactment of Code of 1919, sec. 5767.

The facts in *Fulcher* v. *Parker*, 169 Va. 479, 194 S. E. 714, were that William H. Parker, with the consent of the insured, purchased three insurance policies, totaling $770, on the life of Maggie Parker, his aunt. He paid the premiums on these policies until October, 1924, when he was committed to the Central State Hospital in Petersburg. Thereafter his wife, Ophelia L. Parker, paid the premiums on the insurance policies until the death of the insured in June, 1931. It was held that Ophelia Parker had no insurable interest in the life of Maggie Parker, her husband's aunt, and that she was entitled to recover only the amount of premiums paid by her and William Parker.

The facts in *Green* v. *Southwestern Voluntary Ass'n*, 179 Va. 779, 20 S. E. (2d) 694, were that, while Robert Clayton Green was engaged to marry Minnie Donald, he took out an insurance policy on his own life for her benefit but died before the marriage was consummated. It was held that Minnie Donald had an insurable interest in the life of her fiancé, and that she was entitled to recover the amount of the policy. It will be noted that the insured paid the premiums on his own life for the benefit of another. However, the case was decided on the ground that the named beneficiary had an insurable interest in the life of the insured.

*Mutual Life Ins. Co.* v. *Board, etc., Co.*, 115 Va. 836, 80 S. E. 565, L. R. A. 1915F, 979, holds that a corporation has an insurable interest in the life of its president, and that it may purchase and pay the premiums on an insurance policy on his life for the benefit of the corporation.

It will be noted that, in each of the foregoing cases except *Green* v. *Southwestern Voluntary Ass'n, supra,* the beneficiary, or the assignee, paid the premiums on the life insurance of another; and it was held that, unless such beneficiary had an insurable interest in the life of such other, such contract was invalid. This principle is based upon the view that, where a beneficiary acquires an insurance contract on the life of another by the payment of the premiums, and such beneficiary has no insurable interest in the life of such other,

the transaction is a mere speculative or wagering contract. It is said that this gives to such a beneficiary a financial interest in the destruction of the life of the insured and tends to foster crime.

This reasoning, which appears as *dicta* in many Virginia cases, was based on the opinion in *Roller* v. *Moore, supra*, which, in turn, was based on expressions found in *Warnock* v. *Davis, supra*. In *Grigsby* v. *Russell*, 222 U. S. 149, 32 S. Ct. 58, 56 L. Ed. 133, 36 L. R. A. (N. S.), 642, Ann. Cas. 1913B, 863, opinion by Justice Holmes, the reasoning in *Warnock* v. *Davis* was rejected, and it was held, notwithstanding expressions to the contrary in the former opinions, that an assignment of a valid policy for a valuable consideration by the insured to one not having any insurable interest in the life of the insured is valid. The court said: "The danger that might arise from a general license to all to insure whom they like does not exist. Obviously, it is a very different thing from granting such a general license, to allow the holder of a valid insurance upon his own life to transfer it to one whom he, the party most concerned, is not afraid to trust. The law has no universal cynic fear of the temptation opened up by a pecuniary benefit accruing upon a death. It shows no prejudice against remainders after life estates, even by the rule in *Shelley's Case*. Indeed, the ground of the objection to life insurance without interest in the earlier English cases was not the temptation to murder but the fact that such wagers came to be regarded as a mischievous kind of gaming. St. 14 George III, c. 48.

"On the other hand, life insurance has become in our days one of the best recognized forms of investment and self-compelled saving. So far as reasonable safety permits, it is desirable to give to life policies the ordinary characteristics of property. This is recognized by the Bankruptcy Law, sec. 70, which provides that unless the cash surrender value of a policy like the one before us is secured to the trustee within thirty days after it has been stated the policy shall pass to the trustee as assets."

The facts in the case now under consideration are distinguishable from those of the former Virginia cases cited. Heflin purchased the life insurance policy on his own life; he paid the full contract price for the insurance; and he named Ruby S. Burton, who had no insurable interest in his life, as beneficiary. These facts evidenced good faith and confidence and reduced the speculative or wagering feature to a degree too slight for the law to condemn the transaction. (See Vance's Handbook of the Law of Insurance (1904), p. 128). These facts should put the beneficiary in a life insurance policy on the same plane as a beneficiary named in a will during the life of the testator.

In 29 Am. Jur. 312, the applicable principle is stated thus: "There is a very definite distinction between the questions as to the insurable interest of one taking out a policy on the life of another and as to the right of one to take out a policy on his own life for the benefit of another. The general rule is that every person has an insurable interest in his own life and may insure it for the benefit of his estate, and may also, in the absence of statute, insure it in good faith for the benefit of any person whom he sees fit to name as the beneficiary, regardless of whether such person has an insurable interest in his life. The doctrine is based upon the theory that it is not reasonable to suppose that a person will insure his own life for the benefit of another for the purpose of speculation, or be tempted to take his own life in order to secure the payment of money to another, or designate as the beneficiary a person interested in the destruction, and not in the continuance, of his life."

This rule, unless modified by statute, is applied in the Federal courts and in all the State courts except Texas. See the following text books, annotations and cases cited: 29 Am. Jur., pp. 311, 312, note 13; 108 A. L. R., p. 449, annotation; 1 Cooley's Briefs on Ins. (2d ed.), p. 337 and note, p. 414; 37 C. J., p. 389, note 39, p. 397; I Couch's Cyc. of Ins. Law, p. 780, note 35, and page 804.

When an insured pays the full contract price for an insurance policy and reserves the right to change the bene-

ficiary at will, such contract is the absolute property of the insured and he should have the same right to dispose of such property as he has to bequeath and devise his other assets, and it is hereby expressly so declared.

The second question presented is whether a named beneficiary is entitled to recover from the estate of the insured the amount deducted by an assignee creditor from the face value of the policy collected by such assignee.

It is conceded that the right of the bank, as assignee, to apply the proceeds of the policy to the payment of its debt is superior to the right of the beneficiary. The controversy is between the executors of the estate of the beneficiary and the executors of the estate of the insured. There is no controlling decision on the question in Virginia.

There is a line of cases which holds that, where the insured, as in this case, reserves the right to change the beneficiary and makes an assignment of the policy to secure the payment of a debt, such an assignment is in effect a change of beneficiary *pro tanto* and hence the named beneficiary is entitled only to the difference between the amount due the assignee and the amount due on the policy. *Merchants' Bank* v. *Garrard*, 158 Ga. 867, 124 S. E. 715, 38 A. L. R. 102; Annotations, 135 A. L. R. 1048.

The basis for this conclusion is that the policy is the absolute property of the insured, in which the beneficiary has no vested interest, and that the mere assignment of it reveals his intention to reduce the amount of the donation to the named beneficiary.

The facts in *Walker* v. *Penick*, 122 Va. 664, 95 S. E. 428, were that Bishop Clifton C. Penick insured his life for $10,000 and named his daughter as the beneficiary. The insured reserved the right to change the name of the beneficiary at will. He borrowed $3,175.30 from the insurance company, which indebtedness was evidenced by a note payable to the company and made a first lien on the policy. The note further provided that, in the event the interest on the note or any premium on said policy was not paid when due, then said policy should become void and so much of

its cash value as was necessary should be applied on the payment of his indebtedness to the company; and that, in case of the death of the insured, the amount due on the note should be deducted from the proceeds of the policy and the difference paid to the beneficiary. Upon the death of the insured, the amount of the indebtedness due the company was deducted from the face value of the policy and the difference paid to the daughter. The daughter instituted an action of *assumpsit* against the executors to recover the amount deducted by the insurance company from the proceeds of the policy. In denying recovery, Judge Burks, speaking for the court, at pages 672 and 673, said: "The designation of the plaintiff as beneficiary in the policy gave her the right, if there was no change in the beneficiary, to whatever was payable on the policy, according to its terms, and nothing more. Her right to recover on the policy accrued at the death of the insured, and she was then entitled to the policy, or its proceeds. Her designation as beneficiary constituted a gift from the insured, and was never intended to, and did not, create any liability upon the donor, or his estate. This gift became effectual on the death of the donor, and consisted of whatever sum was demandable of the company at that time. Under the terms of the policy, the company itself could not have enforced the payment of this note, after the death of the insured, out of any other fund than that pointed out by the policy as the primary fund for the payment thereof. At the death of the insured, the net sum due on the policy was the extent of the liability of the company by reason of the policy, and, under its terms, providing for the deduction of the note, that sum was all the beneficiary was entitled to receive. As she has received that sum, no part of her estate was ever applied to the payment of the note."

In other words, the intention of the insured to limit the gift to his daughter to the difference between the amount he borrowed from the company and the face value of the policy was conclusively established by his transaction with the insurance company.

The facts in the case at bar are quite different, and do not reveal such an intention on the part of the insured. After he had named Ruby S. Burton as beneficiary, the insured borrowed, not from the insurance company but from the Farmers and Merchants State Bank of Fredericksburg, the sum of $65,000 and made his promise to the bank, as evidenced by his note, the principal obligation and the two insurance policies and the first mortgage bonds collateral security for the payment of the debt.

The beneficiary, during the life of the insured, had no vested interest in the policy. She had a mere expectancy quite similar to that of a legatee during the life of the testator. However, if no change was made in the policy, upon the death of the insured, the right of the beneficiary became fixed and vested.

The right of the insured to the contract of insurance was absolute. He could have defeated the expectancy of the beneficiary in many ways. He could have exercised the power of appointment and named another beneficiary; he could have surrendered the policy for its then cash value; he could have designated the pledgee, the bank, as beneficiary *pro tanto;* or he could have made the proceeds of the insurance policy a primary fund out of which to discharge his indebtedness. The insured exercised none of these rights. He simply assigned the policy with other assets owned by him as collateral security to pay an obligation for which he was otherwise primarily bound. "Collateral means secondary or subsidiary. Such security is to be resorted to only in the event that the pledgor fails to perform the principal contract. A pledge as collateral security *ex vi termini* excludes the idea that the thing pledged is designed as the primary source from which payment is to be made." *Barbin* v. *Moore,* 85 N. H. 362, 159 A. 409, 415, 83 A. L. R. 62, 73.

The assignment of neither policy was for a specified amount. The bank elected to prorate the full amount of its indebtedness between the proceeds of the two policies, and surrendered the first mortgage bonds to the executor

of the insured. The bank could have deducted the full amount of its indebtedness from the proceeds of the $75,000 policy, or it could have collected the first mortgage bonds valued at $10,000 and prorated the balance of its indebtedness between the proceeds of the two policies. In either event, the amount of the gift to Ruby S. Burton would have been enhanced. The rights of a beneficiary under such circumstances should not depend upon the whim or the arbitrary action of an assignee. Such rights must rest upon a just and equitable principle. The cases are practically unanimous in declaring that the intention of the insured is the controlling factor in determining the rights of the parties.

The facts in *Russell* v. *Owen*, 203 N. C. 262, 165 S. E. 687, were that Owen borrowed from the life insurance company $6,000, for which he and his wife executed a bond secured by a deed of trust on certain land. Owen also purchased and delivered to the creditor as additional security a policy on his life naming his wife as beneficiary and reserving the right to change the beneficiary at will. Owen died before the obligation was paid and the assignee collected it from the proceeds of the insurance. It was held that the wife's money (the proceeds of the insurance policy) was used to pay a debt for which the husband's estate was primarily liable and that she, as a creditor, was subrogated to the rights of the assignee of the policy.

In *Mutual Life Ins. Co.* v. *Illinois Nat. Bank*, 34 F. Supp. 206, the facts were that Arthur D. Mackie, the insured, named his son, Donald M. Mackie, the beneficiary in one life insurance policy, and his wife, Maud Mackie, the beneficiary in another life insurance policy, and reserved the right to change the names of the beneficiaries in the policies. He assigned both policies and other assets to the Illinois National Bank as collateral security for the payment of a debt due the bank. On the death of the insured, the bank collected the face value of the policies and applied the proceeds of the policy in which the son was named beneficiary to the payment of its indebtedness, delivered the proceeds of the other insurance policy undiminished to the widow,

and transferred the other collateral to the personal representative of the insured. The court held that the determining factor in ascertaining the rights of the parties was the intention of the insured, and that the facts, as stated, led to the conclusion that it was the intention of Arthur D. Mackie to treat these policies alike and that it was not his intention that his estate should be benefited to the detriment of his son who was the beneficiary named in one policy.' "While the bank, as creditor, had the right to look to such collateral as it chose and to release the Northwestern policy to the widow and make no claim thereto, yet such action on the part of the bank should not be allowed to defeat the plain intent of the deceased or to enable the bank to diminish Donald M. Mackie's funds, nor benefit the widow."

The same principle was applied in *Farracy v. Perry* (Tex. Civ. App.), 12 S. W. (2d) 651.

In *Kash v. Kash*, 260 Ky. 508, 86 S. W. (2d) 273, it was held that the intention of the insured was the controlling factor in a controversy between the beneficiary in a life insurance policy and the estate of the insured. The court stated that the language of the instrument was sufficiently clear to show that the insured intended to make the proceeds of the insurance policy the primary fund out of which to pay the indebtedness and that the designated beneficiary was entitled to receive such amount as remained after the discharge of the indebtedness.

In *Froman v. Froman*, 293 Ky. 1, 168 S. W. (2d) 361, the assignment of the policy, among other things, stated: "No person interested in such policy shall, on account of the application of any of the proceeds of such policy on said liability secured by the assignment thereof, have the right to contribution or reimbursement from any other party or to be subrogated to the rights of the bank in any other collateral." The court held that this language denied the beneficiary the right to any contribution or reimbursement from the estate of the insured.

The principal obligation is the amount owed the Farmers and Merchants State Bank of Fredericksburg, as

evidenced by the promissory note executed by Elmer G. Heflin. The life insurance policies were transferred and used as a collateral or secondary means to insure its payment. While the bank had a right to use the collateral in payment of the obligation due it, the exercise of this right did not deprive the beneficiary named in the policy of her right to subrogation as it was her money that was used to discharge an obligation for which the Heflin estate was primarily obligated.

The decree of the trial court is reversed, and a final decree entered here in favor of the appellants for $16,191.40, with interest from November 7, 1941.

*Reversed and final decree.*

CAMPBELL, C. J., and HOLT, J., dissenting.

For the reasons stated in the opinion formerly handed down by this court (183 Va. 601, 32 S. E. (2d) 704), we dissent from the majority opinion upon the rehearing, this day handed down by Mr. Justice Hudgins.