FRANCIS H. W. DUCROS AND PHYLLIS A. DUCROS, HUSBAND AND WIFE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 64518. Filed September 30, 1958.

*Earle W. Wallick, Esq.*, for the petitioners.
*Maurice B. Townsend, Jr., Esq.*, for the respondent.

MULRONEY, *Judge:* Respondent determined a deficiency in the petitioners' income tax for the year 1951 in the amount of $1,346.54 and addition to tax in the amount of $138.60. The issues are (1) whether the receipt of $5,705.91 in 1951, paid to petitioner Phyllis A. Ducros, as the beneficiary of a policy issued by a life insurance company on the life of Carlton L. Small, is excludible from gross income under section 22 (b) (1) (A);[1] and (2) whether the petitioners are liable for addition to tax in the amount of $138.60 under section 294 (d) (1) (A) for failure to file a declaration of estimated tax.

### FINDINGS OF FACT.

Some of the facts have been stipulated and they are so found.

Francis H. W. Ducros and Phyllis A. Ducros, husband and wife, are residents of Gates Mills, Ohio. They filed a joint income tax return for the year 1951 with the then collector of internal revenue at Cleveland, Ohio.

Smead & Small, Inc., hereinafter called the corporation, was organized under the laws of the State of Ohio. E. R. Smead was the founder and president of the corporation until his death in January 1948, when Carlton L. Small became president. Francis H. W. Ducros was treasurer and director of the corporation during the years here involved. In 1948, after the death of E. R. Smead, the common stock of the corporation was held as follows: Olivia Reed, daughter of E. R. Smead, 50 per cent; Constance S. Small and Carlton L. Small, 40 per cent; and Phyllis A. Ducros, 10 per cent. There were 100 shares of common stock issued and outstanding. The 10 shares of stock held by Phyllis were transferred to her by her husband. The corporation has never paid dividends on its stock. In 1951 the corporation reported a net income of $34,031.48.

---

[1] All section references are to the Internal Revenue Code of 1939, as amended, unless otherwise noted.

Sometime prior to the death of Smead, the corporation set up a plan of procuring life insurance policies on the lives of its officers, Smead, Small, and Ducros. The corporation did not contemplate this insurance for its own benefit although it was to pay all premiums and be named the original beneficiary. The plan was to obtain policies granting the corporation the right to change beneficiaries and by the exercise of this right have the proceeds distributed, on the death of the insured, to the stockholders in various proportions, mostly related to their interests in the corporation. The plan was carried out and policies were secured on the life of Smead in the sum of $25,000, on the life of Small in the sum of $15,000, and on the life of Ducros two policies, one for $10,000 and one for $15,000.

The policy here involved is No. 987,972 on the life of Small for $15,000, taken out May 17, 1938, with the New England Mutual Life Insurance Company. The policy consists of an ordinary printed policy with two typed clauses added thereto. The printed portion contains the usual clauses found in an ordinary life policy applicable generally when the insured is taking out a policy on his own life. One of the printed "General Provisions" of the policy reads as follows:

RIGHTS OF OWNER

Prior to maturity of a policy by death or as an endowment, the right to change the beneficiaries and any endowment payees, receive dividends, assign the policy as collateral security, or exercise any right, option or benefit contained in the policy or permitted by the Company, including the right to change all provisions governing control of the policy, shall be reserved to the Owner of the policy, without the consent of any beneficiary; and the rights of any beneficiary shall be subject to any interest so created. The Insured shall have no such rights unless the Insured shall be the Owner.

There was attached to the policy the following typed special provisions:

NEW ENGLAND MUTUAL LIFE INSURANCE COMPANY
Boston, Massachusetts

Policy No. 987972                                               Carlton L. Small

A. It is understood and agreed that upon the decease of the Insured, the amount of the policy, increased by any additions and accumulated surplus, and reduced by any indebtedness, will be paid to SMEAD & SMALL, INC., its successors and assigns; hereinafter referred to as "said beneficiary."

B. The Insured shall have no right to change the beneficiary and shall have no right, title or interest whatsoever in the policy. All incidents of ownership in the policy shall be vested in said beneficiary and the right shall be reserved to said beneficiary, without the consent of the Insured, to change the beneficiary, receive dividends, assign the policy, and to exercise for said beneficiary's own benefit any right, option or benefit contained in the policy.

Boston, Mass., May 17, 1938

/s/ Morris P. Capen
HS                                                                    *Secretary*

On June 17, 1938, 1 month after the issuance of the policy, the corporation executed, evidently on the insurance company stationery, a request for change of beneficiary instrument, as follows:

Original

NEW ENGLAND MUTUAL LIFE INSURANCE COMPANY
Boston, Massachusetts

Request is hereby made that Policy No. 987972 on the life of Carlton L. Small, be made payable, in case of the decease of the Insured and subject to any indebtedness to the Company thereon or secured thereby, as follows:—Sixty-three per cent (63%) to MARIE O. SMEAD, (born November 28, 1876), now residing at the Wade Park Manor, Cleveland, Ohio, and to the executors or administrators of said Marie O. Smead; Twenty-seven per cent (27%) to CONSTANCE S. SMALL, wife of the Insured, and to the executors or administrators of said Constance S. Small; and Ten per cent (10%) to F. H. DUCROS, business associate of the Insured, and to the executors or administrators of said business associate. The Insured shall not have the right of revocation and request is hereby made that all incidents of ownership in said policy be granted unto Smead & Small, Inc., its successors and assigns, thereby reserving to said Smead & Small, Inc., its successors and assigns, during the lifetime of the Insured, but not after his death, the right to change the beneficiaries, receive dividends, assign the policy as collateral security, surrender the same to the Company for its cash value, and to exercise any right, option or benefit contained in the policy, without the consent of the Insured or any beneficiary, including the right to change these provisions governing control of the policy. Any and all beneficiary provisions and methods of settlement inconsistent with the above are hereby revoked.

June 17th 1938.                                         SMEAD & SMALL, INC.
Fill in date
Witness /s/ Jno. B. Cochran
(By some person other than a beneficiary)       By: /s/ E. R. Smead
                                                                                President

Witness /s/ Jno. B. Cochran
(By some person other than a beneficiary)       By: /s/ F. H. W. Ducros
                                                                                Treasurer

This was received by the insurance company and an endorsement was made by the insurance company to be filed with its records and a duplicate was sent to the corporation to be attached to the policy. The endorsement was to the effect that the policy would be payable in accordance with the request of June 17, 1938.

On May 12, 1947, the corporation executed and sent to the insurance company a second request for a change in the beneficiaries in the policy which, in form, was almost identical with the June 17, 1938, request. But this request substituted Olivia Smead Reed, daughter of E. R. Smead, for the 63 per cent interest, and Phyllis A. Ducros for the 10 per cent interest. Sometime before this, F. W. Ducros had transferred his 10 shares of stock in the corporation to his wife, Phyllis. This request left the 27 per cent interest to Constance S. Small un-

changed. The request was duly received by the insurance company on May 14, 1947, and the endorsement procedure, previously outlined with respect to the first request, was followed.

A third request for change of beneficiaries in the policy was made by the corporation under date of November 15, 1948. This decreased the interest of Olivia Smead Reed from 63 per cent to 40 per cent, increased the per cent of Constance S. Small from 27 per cent to 40 per cent, and increased the per cent of Phyllis Ducros from 10 per cent to 20 per cent. This request was received by the insurance company and the endorsement procedure previously outlined was followed.

Sometime after this last change of beneficiary, Ducros became dissatisfied with the proportionate distribution of the corporate profits that he was getting in the form of bonus or otherwise and he discussed the matter with Small. As a result of this discussion, and in order to satisfy Ducros, a fourth change of beneficiary was made by the corporation in the policy. This request was executed February 27, 1950, and it increased the share of Phyllis Ducros to 40 per cent and increased the share of Constance Small to 60 per cent, thus eliminating all interest of Olivia Smead Reed. This request was duly received by the insurance company on March 2, 1950, and the endorsement procedure previously outlined was followed.

In all of these instruments requesting changes of beneficiaries which we have not set forth, provisions were made for alternate beneficiaries in event the named beneficiary did not survive the insured—sometimes such persons as the sisters-in-law of the named beneficiary were named as such alternate beneficiaries. The corporation paid all of the premiums due under the policy.

Carlton L. Small, the insured, died on or about July 31, 1951, and on August 27, 1951, the New England Mutual Life Insurance Company paid directly to Constance S. Small and Phyllis A. Ducros the total amount due under policy No. 987,972 by sending a check to Constance S. Small in the sum of $8,558.87 and a check to Phyllis A. Ducros in the sum of $5,705.91.

OPINION.

The parties stipulate that "[t]he sole issue with respect to the deficiency in income tax is whether the amount of $5,705.91, received by PHYLLIS A. DUCROS from NEW ENGLAND MUTUAL LIFE INSURANCE COMPANY, on or about August 27, 1951, constitutes taxable income to her." Petitioners' only argument is that such payment does not constitute taxable income to her because of the exclusion and exemption provided for in section 22 (b) (1) (A). The pertinent part of the cited statute is as follows:

SEC. 22. GROSS INCOME.

(b) EXCLUSIONS FROM GROSS INCOME.—The following items shall not be included in gross income and shall be exempt from taxation under this chapter:

(1) Life Insurance, Etc.—Amounts received—

(A) under a life insurance contract, paid by reason of the death of the insured; * * *

It is petitioners' argument that the $5,705.91 paid by the insurance company to Phyllis in 1951 was an amount "received * * * under a life insurance contract, paid by reason of the death of the insured" within the plain language of the quoted statute and is therefore excluded from her gross income and exempt from taxation.

The only question in this case is whether the contract, under which the payment was made to Phyllis, was a "life insurance contract" within the meaning of the statute.

It is well settled that in that class of insurance policies where one, for his own benefit secures a policy on the life of another, the assured must have some pecuniary interest in the continuance of the life of the insured. As stated in Vance, Insurance, sec. 31, pp. 189–190 (3d ed.):

To allow such insurance to be made by persons having no other interest in the continuance of the lives insured than springs from the prospect of making gain through their early termination, would be intolerable. The circumstances attending the making of the contract must be such as to prove the existence of a bona fide desire and interest on the part of the assured that the life insured shall continue during its natural term. The circumstances that give evidence of such a desire are said to constitute an insurable interest. * * *

In the leading case of *Conn. Mutual Life Ins. Co.* v. *Schaefer*, 94 U. S. 457, the rule is stated that "[a] man cannot take out insurance on the life of a total stranger, nor on that of one who is not so connected with him as to make the continuance of the life a matter of some real interest to him" and the opinion emphasizes that the "essential thing is, that the policy shall be obtained in good faith."

In *Herman Goedel*, 39 B. T. A. 1, at page 10, we said:

It is well settled law in this country that a valid policy of insurance can not be taken out by one person for his own benefit on the life of another *in which he has no insurable interest.* [Citations]. * * *

Where a person takes out an insurance policy on his own life, no question of insurable interest arises because it is well settled that a man has an insurable interest in his own life. *Conn. Mutual Life Ins. Co.* v. *Schaefer, supra.* But where one takes out a policy of life insurance on the life of another with no insurable interest in that life, the policy is not a life insurance contract within the generally accepted meaning of that phrase but a wagering agreement. 1 Couch, Cyc. of Ins. Law sec. 296, p. 777; Restatement, Contracts, sec. 520; *Wilson* v. *Progressive Life Ins. Co.*, 61 Ga. App. 617, 7 S. E. 2d 44; *Herman Goedel, supra.*

The illustrated rule of Restatement, Contracts, sec. 520, is:

A, an insurance company, issues a policy either of fire or life insurance to B and is paid a premium therefor. B has no insurable interest in the building or life to which the policy relates. The policy is a wagering agreement.

"[A]ny reasonable expectation of pecuniary benefit or advantage from the continued life of another creates an insurable interest in such life." *Conn. Mutual Life Ins. Co.* v. *Schaefer, supra*. See also *Warnock* v. *Davis*, 104 U. S. 775, cited and quoted from in *Herman Goedel, supra*.

The expression "life insurance contract" in the statute here involved in the situation where one is insuring the life of another, means a contract where the party who, for his own benefit, takes out the policy on the life of another has an insurable interest in that life; and it must be taken out in good faith to ameliorate the consequences of loss to the beneficiary in the event of the death of the named insured person. *United States* v. *Supplee-Biddle Hardware Co.*, 265 U. S. 189; *Conn. Mutual Life Ins. Co.* v. *Schaefer, supra*. In short, before the statute is applicable to exclude the payment under the policy from gross income, the policy must not be a "wagering contract." *United States* v. *Supplee-Biddle Hardware Co., supra*.

In the last-cited case it was held that the proceeds of a life insurance policy taken out by a corporation for its own benefit on the life of Biddle, its president, with the premiums paid by the corporation, were excluded from the corporation's gross income under the Revenue Act of 1918, excluding from gross income "the proceeds of life insurance policies paid upon the death of the insured to individual beneficiaries or to the estate of the insured." But the opinion points out the requisite "insurable interest on the part of the company in the life of Biddle" was present and that the policy "is not a wagering contract."

The record in this case, including the surrounding circumstances, and the peculiar provisions of the policy, show conclusively that the policy involved was not a "life insurance contract" and was not intended to be a life insurance contract within the generally accepted meaning of that term in the great body of insurance law or within the intendment of the exclusion statute here involved.

The policy was taken out by the corporation on the life of its president, Carlton Small. We can accept the general theory of business insurance where the relationship of the corporate officer to the corporation is such that the corporation will suffer a loss upon the death of the officer. This relationship can show the existence of an insurable interest by the corporation in the officer so the corporation can insure, for its benefit, against the hazard of his death. But here the evidence affirmatively shows that the corporation, by procuring

this policy, was not contemplating any insurance at all for its own benefit. The policy was merely obtained, with the corporation as beneficiary, so its benefits could be immediately bestowed by the corporation upon others by means of a unique transfer of beneficiary clause. One month after the policy was issued to the corporation the corporation changed the beneficiary from itself to individuals. The company had a plan of procuring life insurance contracts on the lives of its officers with the corporation as the original beneficiary but the plan provided the beneficiary was to be changed so that the corporation would receive nothing when the insured officer died and the stockholders would receive the proceeds of the policy. The policy here involved was taken out pursuant to that plan. Ducros testified to this. When asked what the "policy" of the company was with respect to these various insurance contracts with particular reference to the one in question here, he replied: "Distribution of it according to the percentage of ownership." He further said that the last change in beneficiaries in the policy in question, which increased his wife's share from 20 per cent to 40 per cent, came about as a result of his telling Small that he was dissatisfied with the distribution of profits in the form of bonus or otherwise that he was getting.

Clearly this is not the case where the corporation purchased insurance on its officer's life in good faith to avoid or ameliorate the consequences of loss by the corporation in the event of his death. The insurance was purchased by the corporation in pursuance of a plan to distribute corporate profits to shareholders. The policy, with its queer, unnatural provision for change of beneficiary by the corporation (even after the corporation had no beneficial interest in the contract) was a mere device employed for distribution of corporate earnings. The policy was a pure wagering contract, whereby neither the corporation nor the individual beneficiaries had any contemplation or expectation of benefit from the continuance of the life insured. They could only contemplate gain by the termination of that life.

Modern life insurance contracts usually provide for the reservation in the insured of the right to change the beneficiary. This policy flatly states that the insured shall have no right to change the beneficiary but that right will be reserved to the originally named beneficiary, the corporation. The change could even be made without the consent of the insured and even after the corporation was no longer beneficiary. We think such a clause in a policy taken out on the life of another is without precedent in the great body of insurance law. At least we can say, after much research, we have not found any case where a policy with such a provision was involved nor any statement in any text discussing such a provision. Its mere presence in this policy accents the wagering feature for the full sweep of the clause would always authorize transference of rights to persons whose

sole interest is not the continuance of life but the death of the insured. It is our conclusion that the policy in question was not a bona fide "life insurance contract" within the meaning of the statute and the amount paid Phyllis under said contract was not excludible from petitioners' income under section 22 (b) (1) (A).

Since the policy started life as a wagering contract it would not be transformed into a life insurance contract by a beneficiary change to one who also had no insurable interest in the life of the insured. It certainly cannot be argued under the facts of this case that Phyllis had any insurable interest in the life of Small. It was not to her pecuniary interest that his life continue.

Petitioners admit the addition to the tax in the amount of $138.60 is warranted under the provisions of section 294 (d) (1) (A) if it is determined the amount Phyllis received from the insurance company is includible in her gross income. We have held that it is; therefore, the decision on the issue will be for respondent.

Reviewed by the Court.

*Decision will be entered for the respondent.*