ESTATE OF J. E. HORNE, DECEASED, ANDREW BERRY, EXECUTOR, AND AMELIA S. HORNE, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3904-74.    Filed September 9, 1975.

*Raymon R. Finch,* for the petitioners.
*Maurice W. Gerard* and *Dudley W. Taylor,* for the respondent.

OPINION

FEATHERSTON, *Judge:* Respondent determined a deficiency in the amount of $23,928.53 in petitioners' Federal income tax for 1970. One issue is left for decision: Whether any part of the proceeds of two life insurance policies, owned by a corporation on the life of decedent J. E. Horne, which were paid to petitioner Amelia S. Horne, the named beneficiary, who owned approximately 41 percent of the stock of the corporation, is taxable as a dividend to her.

All the facts are stipulated.

Petitioners Amelia S. Horne (hereinafter Mrs. Horne) and Andrew Berry, executor of the Estate of J. E. Horne, deceased, were legal residents of Orangeburg, S. C., on the date the petition was filed. Mrs. Horne and the executor filed a joint Federal income tax return for 1970 with the Internal Revenue Service Center, Chamblee, Ga.

On May 2, 1930, Horne Baxter Motor Co. was incorporated in the State of South Carolina. In 1943 the name of the corporation was changed to Horne Motors, Inc. (Horne Motors), and in 1955 once again its name was changed to Horne Investment Co.

(Investment or sometimes the corporation). On September 24, 1948, East End Motor Co. (East End) was incorporated in the State of South Carolina. J. E. Horne, now deceased (decedent), owned all or a majority of its authorized stock.

On July 16, 1949, Horne Motors and East End each took out a life insurance policy in the face amount of $25,000 on the life of decedent. Both policies were written by the Pilot Life Insurance Co.; the policy taken out by Horne Motors was No. 320209 and the one taken out by East End was No. 321473. Each corporation had all the incidents of ownership of the policy it had taken out and was the named beneficiary.

During 1956 one C. B. Morgan acquired all the outstanding stock of East End. On July 26, 1957, Investment purchased life insurance policy No. 321473 from East End for $7,700. An "Owner Control Rider" was issued reflecting that full ownership of the policy was vested in Investment.

On August 11, 1960, an "Owner Control Rider" was issued showing that Investment had full ownership of policy No. 320209, the policy originally issued to Investment's predecessor, Horne Motors.

On April 26, 1966, Investment changed the beneficiary of both policies to Mrs. Horne. At the time of this beneficiary change and until decedent's death, Mrs. Horne owned 315 of the 773 outstanding shares in Investment. From the date of incorporation of Investment up to his death, decedent was its majority shareholder. At his death he owned 416 shares. Several other persons owned Investment's other 42 shares.

From the time the policies were purchased in 1949 until the death of decedent, the insured, the corporate owners paid all the premiums. Investment carried the cash surrender values of the policies as an asset on its books under the heading "Other Assets: Cash Surrender Value Life Insurance—Officer." In 1964 Investment elected to have the dividend accumulations of $4,841.25 for each policy apply to fully pay up each policy. From July 16, 1964, to the date of decedent's death, the combined value of the two policies was carried on Investment's books as an asset of $37,295.50.

Decedent died on July 12, 1970. On September 2, 1970, Pilot Life Insurance Co. issued a check in the amount of $50,338.12 to Mrs. Horne. Of this amount, $50,000 represented the combined face value of policy Nos. 320209 and 321473, and $338.12

represented interest accrued thereon from July 12, 1970, the date of death of the insured, through the date of payment. The tax return filed by decedent's executor and Mrs. Horne did not report any portion of the $50,338.12 as income.

The issue to be decided is whether the insurance proceeds received by Mrs. Horne under the two policies were taxable to her as a dividend distribution by Investment.

Petitioners contend the answer is an easy one, provided by the following language of section 101(a)(1): [1]

[With exceptions not pertinent to this case], gross income does not include amounts received (whether in a single sum or otherwise) under a life insurance contract, if such amounts are paid by reason of the death of the insured.

To support their position, petitioners cite *Ducros v. Commissioner,* 272 F.2d 49 (6th Cir. 1959), revg. and remanding 30 T.C. 1337 (1958).

Respondent points out that Mrs. Horne individually owned 315 of the 773 outstanding shares of Investment. The insurance policies were owned by the corporation and paid for out of its earnings or those of its predecessors. The corporation's investment in the policies was carried on its books as an asset and reflected in its earnings and profits. Respondent argues that by forgoing its own right to the proceeds and causing them to be paid to Mrs. Horne, the corporation thereby made in substance a "distribution" of property to her. Such distribution was a dividend, within the meaning of section 316(a)(1), as follows:

(a) GENERAL RULE.—For purposes of this subtitle, the term "dividend" means any distribution of property made by a corporation to its shareholders—

(1) out of its earnings and profits accumulated after February 28, 1913,
\* \* \*

Respondent contends that since the corporation had earnings and profits in excess of the amount of the insurance proceeds, section 301(c)(1) [2] requires the proceeds to be taxed as a dividend.

Respondent's argument has considerable support in logic. But the tax problems relating to corporate-owned insurance on the life of a shareholder, where the proceeds are not payable to the

---

[1] All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue, unless otherwise noted.

[2] SEC. 301. DISTRIBUTIONS OF PROPERTY.

(c) AMOUNT TAXABLE.—In the case of a distribution to which subsection (a) applies—

(1) AMOUNT CONSTITUTING DIVIDEND.—That portion of the distribution which is a dividend (as defined in section 316) shall be included in gross income.

corporation, have many facets. One facet is the estate tax consequences where, as in the instant case, the decedent is the sole or controlling shareholder of the corporation. Section 20.2042-1(c)(6), Estate Tax Regs., provides in pertinent part:

Except as hereinafter provided with respect to a group-term life insurance policy, if any part of the proceeds of the policy are not payable to or for the benefit of the corporation, and thus are not taken into account in valuing the decedent's stock holdings in the corporation for purposes of section 2031, any incidents of ownership held by the corporation as to that part of the proceeds will be attributed to the decedent through his stock ownership where the decedent is the sole or controlling stockholder. Thus, for example, if the decedent is the controlling stockholder in a corporation, and the corporation owns a life insurance policy on his life, the proceeds of which are payable to the decedent's spouse, the incidents of ownership held by the corporation will be attributed to the decedent through his stock ownership and the proceeds will be included in his gross estate under section 2042. * * *

Since decedent was Investment's controlling shareholder, this regulation would attribute to him, for estate tax purposes, the incidents of ownership of the policies here in question and would treat Mrs. Horne's receipt of the proceeds as a transfer from him to her. Yet we are asked to hold that, for income tax purposes, the substance of the transaction was that Investment received the proceeds and then distributed them to Mrs. Horne as a constructive dividend. While the estate and income tax laws are not always symmetrical, we do not see how the two positions can coexist in this case—how the same insurance proceeds can simultaneously be treated as a *transfer* to Mrs. Horne *from decedent* for estate tax purposes and as a *distribution* to her *from the corporation* for income tax purposes.[3] Respondent cannot so work both sides of the street. If the incidents of ownership of the policies are to be attributed to decedent, as provided in the regulation, section 101(a)(1) would exclude the policy proceeds from Mrs. Horne's gross income. Moreover, in cases in the upper brackets, the estate tax under the regulation plus the income tax under respondent's theory in the instant case would exceed the amount of the insurance proceeds. Surely the court-made, equity-oriented doctrines of constructive ownership, reflected by the

---

[3] Although Mrs. Horne filed a joint return with her husband's estate for 1970, that return would properly include only the income he received prior to his death on July 12, 1970. Sec. 6013(a)(2); sec. 1.6013-1(d)(1), Income Tax Regs. Since the insurance proceeds in dispute were not received until Sept. 2, 1970, they could not be treated as the income of decedent, the controlling shareholder, during the joint return year.

regulation, and constructive dividends, on which respondent's litigation position is based, cannot be so compounded as to produce such a result. Since the estate tax position has been crystallized in a regulation,[4] we are compelled to reject respondent's litigation position in this case.[5]

*Decision will be entered under Rule 155.*

---

[4] Alternatively, respondent contends that if the full amount of the insurance proceeds is not taxable as a dividend, at least the cash surrender value of the policies should be so taxable. See *United States v. Bess,* 357 U.S. 51 (1958). The regulation quoted, in part, in the text (sec. 20.2042-1(c)(6), Estate Tax Regs.) contains no exception for the cash surrender value.

[5] Although sec. 20.2042-1(c)(6), Estate Tax Regs., was issued in 1974 (T.D. 7312, 1974-1 C.B. 277), it was not expressly made nonretroactive. See sec. 7805(b). In reaching our conclusion herein, we assume the validity of this regulation, which has not been challenged by the parties, but expressly note that we do not decide (1) whether the regulation is valid, (2) whether the decedent's estate could be charged with constructive dividends of either the policy proceeds or cash surrender values in this context, or (3) assuming the regulation is valid, whether premiums when paid constituted constructive dividends to Mrs. Horne or the decedent during his lifetime, but see and compare, e.g., *Casale v. Commissioner,* 247 F.2d 440 (2d Cir. 1957), revg. 26 T.C. 1020 (1956).