UNITED STATES FIDELITY & GUARANTY CO. *et al. v.* SUNFLOWER COUNTY *et al.*

(Division B. March 1, 1943.)

[12 So. (2d) 142. No. 35185.]

Cooper & Thomas, of Indianola, for appellants.

Johnson & Allen, of Indianola, and Jackson, Young & Friend, of Jackson, for appellees.

Argued orally by **Forrest G. Cooper,** for appellants, and by **Elbert Johnson** and **Forrest B. Jackson,** for appellees.

**Griffith, J.,** delivered the opinion of the court.

The Bank of Indianola, in Sunflower County, closed its doors and went into liquidation on December 16, 1931.

On that date there was on deposit, of the various public funds of the county, and including the funds of several drainage districts, a total of $52,711. For that year the bank had qualified as the official depository of the county for certain of said funds by giving five surety bonds aggregating the sum of $32,700, and had delivered to the county as security for additional depository funds $20,000 in negotiable drainage district bonds, which bonds were the property of the bank.

Of the funds above mentioned it was the contention of the surety companies, as it is now, that only $39,556 was of that character of funds for which the bank had qualified as official depository, and which, in point of law, would be covered by the depository securities, and that against this amount the county should first credit the $20,000 in pledged drainage district bonds, leaving the surety companies liable only for the balance between the $39,556 and the $20,000, assuming that the pledged drainage bonds were worth their face value.

The fact was, however, that in the depressed financial condition of the country at that time, the drainage district bonds could not be sold at anything near their face value; and the surety companies, appellants here, aver that there was an agreement between them and the board of supervisors of the county, that the surety companies would at once pay to the county the full sum of $32,700, being the aggregate amount of the surety bonds, and that the county would hold the bank's drainage district bonds until saleable at a fair market price, and that when so sold the county would first pay itself the difference between the $32,700 paid in by the surety companies and the $39,556, plus interest on that difference, and would distribute the balance ratably to the surety companies.

The agreement between the surety companies and the board of supervisors was duly entered on the minutes of the board; and for the purpose of this appeal, and for that purpose alone, we will concede that the order so entered was to the effect as averred by the surety com-

panies, and for the same purpose, and that alone, we will concede that the sum total of the official depository funds covered as such by the securities given by the bank to the county was $39,556.

After the agreement aforesaid the county collected the interest on the drainage district bonds and the principal amount of such of them as matured, and finally on May 8, 1935, the remainder of the bonds were sold for $14,059; and the surety companies aver by their present bills that out of all the proceeds of these drainage district bonds there is a balance above the $39,556, less the $32,-700 already paid by the surety companies, of $11,207, when all interest calculations are properly taken into account, and they sue for the recovery of that balance over, and which they say should have been distributed to them under the aforesaid agreement.

This brings at once into view what is to be done about the difference between the total amount of public funds on deposit with the bank aggregating $52,711, as already mentioned, and the aggregate amount of the surety bonds, which was $32,700, leaving in round figures exactly the total amount, face value, of the pledged drainage district bonds which were the property of the bank, and not of the surety companies; and this in turn introduces Sec. 2914, Code of 1930, which provides, in effect, that, ''all money deposited in a bank  .  .  .  by or for a tax collector, or other officer having the custody of public funds, state, county, municipal, levee board, road districts, drainage districts or school districts,'' in whatever name deposited is a trust fund, for the payment of which a preference is imposed on all the free assets of the bank, as against all general creditors.

This $20,000 in drainage bonds, owned by the bank, was free of any other pledge or encumbrance, except that to the county. The public treasuries by force of the statute had an enforceable demand against these bonds, which this court has denominated as being in the nature of a lien. Had the $20,000 in bonds remained in the hands

of the bank and in its own vault, none would question the right of the county to resort to them as assets of the bank against which the county would be entitled, under the cited statute, to enforce its lien to cover the public funds not otherwise fully secured. It must follow that the rights of the county in respect to these bonds were none the less when, instead of being in the vault of the bank, they were in possession of the county. The only difference thereby made was that the county could look first to the pledged assets of the bank in the county's hands, instead of having to look to, or hunt for, other free assets of the bank, if any.

It was the duty of the board of supervisors, therefore, to credit the proceeds of the $20,000 of the bank's bonds against the total amount of the public funds which were on deposit in this bank when it closed its doors. And this total amount had to be increased by the statutory interest and expenses of collection. When this was done nothing was left, as found by the chancellor, out of the proceeds of the $20,000 in bonds to be credited over to the surety companies. The finding of the chancellor was that the county has not yet been fully paid.

Such being the duty of the board of supervisors imposed by law, it was not within their power or authority to contract it away in whole or in part by any agreement with the surety companies, State of Mississippi v. First National Bank, 5 Cir., 66 F. (2d) 9, 13; nor could the surety companies rely upon subrogation, for that doctrine, derivative of a particular creditor, has no application to the prejudice of that creditor, in this case the county, when the claim of the creditor has not yet been paid in full. Fidelity & D. Co. v. Wilkinson County, 109 Miss. 879, 69 So. 865, and State v. First Nat. Bank, supra. For their subrogation the surety companies should have looked to other assets of the bank free from priorities, if any, and not to those pledged to the county.

We have not overlooked the fact that the drainage district funds on deposit with the bank were not, strictly

speaking, county funds. Nevertheless, they were public funds under the protection of Section 2914, Code 1930, and were entitled to share in the $20,000 of the bonds of the bank on deposit with the county. The county, having possession of the bonds, and having obtained the proceeds thereof, was under duty to reimburse the drainage districts, pro rata at least, out of the proceeds, which the county did, so that of this the surety companies have no right to complain.

As to the so-called revolving funds, we are of the opinion that they were within the protection of the broad terms of said Section 2914. Certainly they were not private funds, and under the statute it was immaterial in what name or guise they stood on the bank's books.

Affirmed.