In the Matter of the Estate of Hyman Cohen,
a/k/a Hy Cohen.
Susan Janet Cohen, Appellee, v. Eugene A. Weinberg,
Executor of the Estate of Hyman Cohen, a/k/a
Hy Cohen, and Geraldine J. Cohen, Appellants.

Gen. No. 47,696.

First District, Third Division.

December 9, 1959.

Rehearing denied January 28, 1960.

Released for publication January 29, 1960.

411

 █ 

Eugene A. Weinberg, of Chicago, pro se, and Joseph L. Goldberg, of Chicago, for Geraldine J. Cohen.

Teller, Levit, and Silvertrust, of Chicago (Leon Silvertrust and Lawrence E. Fleischman, of counsel) for plaintiff-appellee.

JUSTICE FRIEND delivered the opinion of the court.

The decedent, Hyman Cohen, during his lifetime made a loan from the Lake View Trust and Savings Bank of Chicago and placed as primary collateral security therefor a certain life insurance policy in the amount of $100,000 in which Susan Janet Cohen was named as beneficiary, together with secondary collateral. Upon his death, the bank looked to this policy as the source for payment of its loan. The beneficiary of the policy thereupon filed a claim in the Probate Court, contending that she was subrogated to the interests of the bank. The claim was allowed by the Probate Court. On appeal to the Superior Court, pursuant to a trial de novo, an order was entered on November 6, 1958, allowing plaintiff's claim in the sum of $53,848.47, together with interest, from which defendants appeal.

The filing of an abstract having been excused, the case is here submitted on an agreed statement of facts, from which it appears that in 1952 decedent applied for a $100,000 life insurance policy, to be issued by the National Life Insurance Company of Vermont, and he arranged with the Lake View Trust and Savings Bank for a loan to provide money with which to pay

the entire amount of the initial premium and the subsequent annual premiums for four years. The beneficiary designated in the policy was Pearl Cohen (who predeceased Hyman Cohen), with plaintiff Susan Janet Cohen named as contingent beneficiary.

The loan was secured by an assignment of this insurance policy to the bank, together with other collateral. The loan was for an amount exactly sufficient to pay the initial and the four subsequent annual premiums on the $100,000 policy. By direction in writing signed by Hyman Cohen, the bank was instructed to pay the entire proceeds of the loan for this purpose directly to the insurance company which issued the policy. No part of the loan passed into or through the hands of Hyman Cohen.

The sixth annual premium on the policy became due in 1957, and on August 23rd of that year decedent executed a new note to the bank in an amount sufficient to retire the note dated November 13, 1952, and to pay the sixth annual premium to the insurance company; in other words, he signed a new note for the old loan, plus the amount of the sixth annual premium. At the same time he again signed a written direction to use the proceeds of the new loan to retire his earlier note and to use the balance in payment of the premium due the insurance company; again, none of the money went into or passed through his hands. The new note was in the amount of $53,848.47, and is the one upon which plaintiff predicates her claim.

After Hyman Cohen's death on December 18, 1957, the bank secured the matured value of the $100,000 policy from the insurance company under the terms of its assignment from decedent, retained the amount due on its loan, and paid the balance to the designated contingent beneficiary, who is the plaintiff here. The bank returned the other collateral to the parties en-

413

titled thereto. Decedent's heirs at law were Geraldine J. Cohen (his widow by his second marriage) and Susan Janet Cohen, his only child, who is now in her early twenties. By his will, dated August 14, 1957, decedent named Eugene A. Weinberg as executor and gave his home and household furnishings to his wife Geraldine J. Cohen. The rest and residue of his estate was bequeathed one-third to his wife Geraldine, and two-thirds in trust to his brother Myer Cohen for the use and benefit of his daughter Susan. Weinberg filed his petition for letters testamentary and was appointed executor December 24, 1957.

As security for the original promissory note in the principal amount of $44,606.47 decedent deposited as collateral the following: the $100,000 policy in the National Life Insurance Company of Vermont; a $5000 policy in the Mutual Life Insurance Company of New York; a $10,000 policy in the Connecticut Life Insurance Company; and United States Treasury bonds in the amount of $6500, not wholly owned by decedent. Decedent also executed three separate assignments of the insurance policies and their proceeds, all dated November 13, 1952, and all duly acknowledged by the respective insurance companies in that month and year. The assignments were all identical in form.

By direction in writing, the decedent directed the bank to pay the proceeds of the note of November 13, 1952, to the National Life Insurance Company of Vermont. On November 14, 1952, the bank issued two cashier's checks in the amounts of $9242 and $35,364.47 to the National Life Insurance Company of Vermont in payment of the first annual premium, and the second, third, fourth, and fifth annual premiums of the $100,000 policy. Decedent made no payments on the principal of the $44,606.47 note through August 1957, but maintained the interest payments to the bank out of his own funds.

On August 23, 1957, decedent executed a new note to the bank in the principal sum of $53,848.47 due and payable one year after date, to retire the original note and to pay the sixth premium which came due at that time. The original collateral and assignments still remained with the bank, and no new assignments were executed. By a written instruction executed on August 23, 1957, Cohen authorized the bank to use the proceeds of his note for $53,848.47 to retire his note, dated November 13, 1952, of $44,606.47, and to pay the balance to the National Life Insurance Company of Vermont for the sixth annual premium of $9242. No payments on account of principal were made on the new note of $53,848.47, but interest payments were maintained out of decedent's personal funds.

All the insurance policies on the life of Hyman Cohen deposited as collateral were payable to Pearl Cohen as primary beneficiary and, on her death, to Susan Janet Cohen, with the exception of the $5000 policy of the Mutual Life Insurance Company of New York which was payable to Pearl Cohen solely, and, by reason of her predeceasing Hyman Cohen without contingent beneficiary named in the policy, the proceeds became payable to the estate of Hyman Cohen. Of the United States Treasury bonds deposited as collateral, bonds in the amount of $3000 were owned by Hyman Cohen, and consequently belonged to and were part of his estate; bonds in the amount of $3500 were the property of Schwartz-Krueger Company and were returned to it.

At the time of decedent's death there was due and unpaid on his note to the bank the sum of $53,848.47, and the bank demanded payment. Susan Janet Cohen requested that the bank file its claim as a creditor against the estate for the amount due on said note, but the bank determined that it would apply the collat-

eral in its possession to the payment of the obligation. Plaintiff further requested that, in the event the bank did so apply the collateral, it first apply the collateral belonging to the estate to the payment of the claim, and then resort to the remainder of the collateral for the balance due. This the bank also refused to do; it proceeded under the collateral assignments that it held, collected the proceeds of the $100,000 policy of which plaintiff was the beneficiary, applied these proceeds to pay the entire indebtedness due on the note of Hyman Cohen, and remitted the balance to Susan Janet Cohen, the plaintiff. The $10,000 policy of the Connecticut Mutual Life Insurance Company was delivered to plaintiff, and the $5000 policy of the Mutual Life Insurance Company and the United States Treasury bonds in the amount of $3000 were turned over to the estate. Subsequently Susan Janet Cohen filed her claim against the estate of Hyman Cohen, decedent, for reimbursement in the amount of $53,848.-47, and interest at the rate of five per cent per annum from May 9, 1958. She contended that she was subrogated to the rights of the bank inasmuch as funds belonging to her, as she claimed, were used to retire the loan of Hyman Cohen. The sole question presented is whether plaintiff is entitled to be subrogated to the rights of the bank and reimbursement of the amount of decedent's loan in the sum of $53,848.47 from the estate.

Plaintiff proceeds on the theory that the bank loan created an indebtedness which, on the borrower's death, became the primary obligation of the estate, and that if the estate's obligation was discharged by resort to the proceeds of an insurance policy held as collateral, the beneficiary of the policy under general equitable principles was subrogated to the bank's claim against the estate and was presumptively entitled to reimbursement of the diminished proceeds.

416

She also contends that the bank should have resorted to all the collateral in its possession and first applied that portion of the collateral held by it belonging to Hyman Cohen.

■ It should be noted at the outset that decedent reserved the right to change the beneficiary in this policy. In the circumstances the beneficiary (plaintiff) acquired no vested interest in the policy during the insured's lifetime. Equitable Life Assur. Soc. v. Stilley, 271 Ill. App. 283, expresses the rule that "where a contract of insurance reserves to the insured the right to change the beneficiary, the latter has a mere expectancy, and no vested right or interest during the lifetime of the insured." Consequently the beneficiary was entitled only to what she was given at the moment of death, and we must look to the documentation to ascertain what that was.

■ Contracts of insurance are governed by the same principles of law as govern contracts generally, and the rights of parties and those claiming under them are governed by the agreement as made. Changes of beneficiaries, assignments and loans with the policy as collateral all fall within this rule. The policy is the basic contract between the insurance company and the insured and may contain provisions which affect or control the intent, meaning, or consequences of other documents. It therefore becomes necessary in each case to examine all the documents in order to ascertain the rights of the parties. The policy in question sets forth the agreement of the decedent and the insurance company with respect to the assignment of the policy as follows:

"ASSIGNMENTS. . . . An assignment of this policy shall operate to the extent thereof to transfer the interest of any Beneficiary whom the assignor has the right to change, . . ."

417

With respect to beneficiary provisions, the policy provided, *inter alia:*

"The interest of any Beneficiary shall be subject to any collateral assignment of this policy duly filed with the Company prior to the designation of such Beneficiary."

The assignment of the policy as executed by the decedent contains the following provisions:

"D. . . . It is expressly agreed that all sums received by the Assignee hereunder, either in event of death of the insured, . . . the obtaining of a loan or advance on the Policy, or otherwise, shall first be applied to the payment of one or more of the following in such order of preference as the Assignee shall determine: (a) principal of and/or interest on Liabilities; (b) premiums on the Policy; (c) principal of and/or interest on loans or advances made by the Insurer on the Policy.

"E. The Assignee covenants and agrees with the undersigned as follows:

1. That any balance of sums received hereunder from the Insurer remaining after payment of the then existing Liabilities shall be paid by the Assignee to the persons entitled thereto under the terms of the Policy had this assignment not been executed; . . ."

Under paragraph D of the assignment Cohen contracted with and required the bank to apply the proceeds of the policy first to the payment of his liability. He stated in this writing that the thing pledged was designed as the primary source from which payment was to be made. This is the statement of his intent; decisions in cases cited by plaintiff where such expres-

418

sions of intent are not found are inapplicable. The language of this assignment indicates that the bank could not have pursued any course other than to satisfy its loan from the proceeds of the policy. No option or choice is given by the foregoing language which constitutes the basic contract between the parties, and, under the terms of assignment, the bank had to comply with the assignment to satisfy the loan before it paid anything to the beneficiary. This expressed clearly the intent of the insured, and it seems to us that it controls the extent of the benefit which is given to the beneficiary.

Plaintiff cites and discusses at considerable length numerous decisions from other jurisdictions, but none correspond with the contractual aspects clearly indicating such a specific interest as is here under consideration. Without exception, in these cases the borrower's estate received a direct financial benefit from the loan, and the proceeds thereof went into the borrower's pocket. The transaction in the instant case was not an ordinary loan wherein Cohen pledged the policy as valuable collateral and received cash. Cohen never received any part of the proceeds of this loan. It was effected to keep the policy of insurance in force, and all the proceeds of the first loan were used to pay the premiums of the insurance policy for the first five years. They were paid directly to the insurance company at Cohen's direction, and the policy was issued contemporaneously with the first loan and only as a result of it. When the loan was renewed in August of 1957 the proceeds were used in a bookkeeping transaction to retire the note of 1952 and to pay the sixth annual premium on the insurance policy. No benefit of any kind inured as a result of these loans to the estate of Hyman Cohen, nor was the estate in any manner enhanced thereby. The question of good conscience and intent become important con-

419

siderations in the determination of this controversy. In the early case of Makeel v. Hotchkiss, 190 Ill. 311, where subrogation was denied, the court observed that it "is an equitable right, and not a legal one, and can be enforced only in equity. It will not be enforced when it would be inequitable to do so or where it would work injustice to others having equal equities," and in the even earlier case of Schmitt v. Henneberry, 48 Ill. App. 322, where it was held that the doctrine of subrogation will not be enforced at the expense of a legal right, the court said that "when the legal or equitable rights of others would be unfavorably affected or wholly disregarded, subrogation would be denied." Such a rule has reference here to the rights of creditors, if any, of Cohen's estate; if the proceeds of the policy were insufficient to pay the debts, then the estate would become secondarily liable; under no circumstances would plaintiff have been called upon to pay. We think that, in good conscience and under principles of justice and equity, plaintiff's claim must be denied.

■ It is the intent of the contracting parties that is determinative; a court cannot rewrite their contract. In the case at bar the intent was specifically expressed by the contracting parties and must be determined by reference to all the documents. Plaintiff's reliance on broad principles of suretyship seems to disregard the relevant facts pertaining to decedent's intent. The assignments in the policy provide that only the balance of the money received from the insurance company, "after payment of the then existing Liabilities," shall be paid to the beneficiary, and that all money received by the assignee had to be first used for payment of the items listed, including principal and interest, before anything could be paid to the beneficiary.

420

Plaintiff asserts that there is no showing in the record that the bank knew, when the loan in question was taken out, that its purpose was to provide for the initial payment of the premium and the annual premiums on the policy. But this statement is refuted by the written directions signed by Cohen and given to the bank, instructing it to pay the proceeds of the loan directly to the insurance company. Not only is this clearly and plainly in the record, but it is obvious from the facts in the case. It would be naive to contend that the bank would loan money upon the cash surrender value of the insurance policy unless it knew that the premiums had been paid in advance; and if it were not for the payment of these premiums the bank would not have had collateral with which to protect its loan. There was no purpose for the loan other than paying the premiums.

Counsel say that they have been unable to find any decisions in this State in which a question pertinent to the facts in this case has been decided, but that other jurisdictions have had occasion to decide similar questions. In Faris v. Faris, 76 Ind. App. 336, 130 N. E. 444, the court denied a claim on like facts, and made the following pertinent observations:

"Here is a specific method of payment provided, an exclusive primary fund created, out of which payment is to be made, which fund is held in hand. It cannot reasonably be contended that the company could have ignored its contract, paid the full amount of the policy to appellant [beneficiary], and then have filed its notes as claims against the estate. As against other creditors and the heirs, it was bound to apply the fund in its hands as it had by its contract agreed to do. With this primary fund for its protection, out of which it had agreed to collect the debt, it had no rights, in lieu thereof, against the general personal

421

estate. Such being the case, there were no rights to which appellant could be subrogated. . . ."

In Walker v. Penick's Ex'r, 122 Va. 664, 95 S. E. 428, the decedent had paid seven annual premiums on a ten-year payment life insurance policy, and then made policy loans from the insurance company to cover the three remaining payments. After the insured's death, the beneficiary received the amount of the policy less the amount of the loans. Subsequently the beneficiary filed a claim against the estate for the amount of the loans, which the court refused to allow, holding that the beneficiary was not entitled, under any circumstances, to more than was paid after the amount of the loans had been satisfied. "Her [plaintiff's] designation," said the court, "as beneficiary constituted a gift from the insured, and was never intended to, and did not, create any liability upon the donor, or his estate." Where an insurance policy gives the insured the arbitrary right to change the beneficiary at will, the act of the insured in obtaining a loan on the policy to enable him to pay the premiums —thus reducing the amount payable to the beneficiary—is, in effect, the court held, the exercise of the right to change the beneficiary to the extent of the loan. Relevant to the issue here was the court's holding that every man has a right to appropriate his property to the payment of debts in whatever way he sees fit, provided his creditors are not defrauded; and if a creditor designates his policy as the primary source for the payment of a loan, the courts will uphold such a designation, and not require payment or reimbursement from another source.

Merchants' Bank v. Garrard, 158 Ga. 867, 124 S. E. 715, was a case where the insured in a policy of life insurance reserved to himself the right to change the beneficiary. The right to make an assignment

thereof was given in his policy, and, with the consent of the insurer, the insured assigned the policy to a bank to secure an indebtedness, the assignment purporting to convey all the right, title, and interest of the insured, together with all dividends, benefits, and advantages to be had or derived therefrom, such assignment being filed with the company at its home office and proper indorsement of the assignment being entered on the policy. The court held that such assignment effected a change of beneficiary in just the same manner as if there had been a substitution of the assignee for the beneficiary in that part of the policy in which the name of the beneficiary appeared; that such an assignment was, in effect, a substitution of a new beneficiary. (Citing decisions from several jurisdictions, including Martin v. Stubbings, 126 Ill. 387.)

In the Martin case a membership certificate in a mutual benefit society named the wife of the insured as beneficiary, but the certificate was assigned to a creditor as collateral. The note and the collateral were given to obtain renewal of a partnership relation which the insured was anxious to continue. Following the death of the insured, his widow as the beneficiary on the certificate claimed its entire proceeds, while the creditor claimed that portion of the proceeds which would satisfy the amount of the note. The court held that the wife had no vested right or interest in the certificate, and that its assignment by the member to a creditor, with the member's written direction to pay to the creditor, was valid and binding, and passed to the latter the right to receive the insurance money to the extent of his debt.

The case here presents a controversy between the beneficiary, decedent's widow, and those creditors of decedent's estate represented by the executor. The terms of decedent's will do not control the disposi-

tion of the loan made upon the security of the insurance policy and the payment of the net proceeds of it to a beneficiary. The facts, together with reasonable inferences, should control.

■ There was nothing unusual in the plan which Cohen applied in this case. He evidently intended to take out a new life insurance policy without depleting his estate, and proceeded to do so. He used none of his own funds to pay the premiums for the policy, but, rather, borrowed money from the bank for that purpose. He also provided that all monies received by the assignee should, upon his death, be first used to pay the debt. This was stated in the various writings executed between the contracting parties, and clearly sets forth the obvious program upon which decedent embarked. He carried out his intent during his lifetime, and the court should give it effect after his death.

Plaintiff's remaining contention is that the bank should have applied against the loan collateral other than the insurance policy in question. Although that policy had a high cash surrender value, it was nevertheless inadequate to satisfy the amount of the loan made to cover the first several annual premiums, and therefore additional collateral was required. We think the entire question with reference to the other collateral for the bank loan is controlled by the same principles of law and equity as govern the principal issue in this case. The contract of the parties specifically, and the documentation in the case generally, indicate that it was the intent of the decedent to satisfy this loan in full, if possible, from the proceeds of the policy for which the loan was created. This is consistent with cases where a decedent borrowed money on real estate and put up an insurance policy as additional collateral because the value of the real estate was not sufficient to justify the loan. In Barbin v. Moore

424

(New Hampshire), 159 Atl. 409, cited and relied upon by plaintiff, the court held that the real estate was the primary and first source from which the loan should be paid; in the case at bar, the new insurance policy was designated as the primary and first source as payment for the debt, and the other, or secondary, collateral was to be resorted to only if the proceeds from the policy were not sufficient. The decision in the Barbin case was governed by local law—a statute which deprived creditors of any right to lay claim to insurance, even where fraud upon them is charged. In that decision the insured, at his death, had a bank loan outstanding, secured by real estate and a life insurance policy in which his children were named as beneficiaries. The bank discharged the mortgage after it was paid by the insurance company, and subsequently the administrator sold the real estate. Plaintiff, as guardian of deceased's children, brought suit against the estate to recover the proceeds of the life insurance policy; if he were successful in his claim, the estate would be left insolvent. The court held that under the statute, as between the estate and the named beneficiaries, the insurance fund was the property of the latter. "A fundamental error in the defendant's argument," said the court, "is the assumption that the assignment as collateral was an extinguishment, pro tanto, of the beneficiaries' rights. It was not that, but only an incumbrance on those rights. By force of the statute they are superior to the rights of his estate and creditors."

We have reached the conclusion that it would be unconscionable and a violation of decedent's intent to allow plaintiff's claim and thereby permit her to receive the full face value of the $100,000 policy, and require the estate to be burdened with assuming the payment of the premiums. Under the facts presented, the doctrine of subrogation is not applicable. Accord-

425

ingly, the judgment of the Superior Court is reversed, and the cause remanded with directions to deny the claim of Susan Janet Cohen as filed in the Probate Court.

Judgment reversed and cause remanded with directions.

BRYANT, P. J. and BURKE, J., concur.