511 So.2d 912 (1987)
Loretta S. DeFOE
v.
GREAT SOUTHERN NATIONAL BANK, et al.
No. 56728.
Supreme Court of Mississippi.
July 29, 1987.
As Modified on Denial of Rehearing September 16, 1987.
Paul M. Neville, Jackson, for appellant.
Robert S. Murphree, John L. Low, IV, Watkins & Eager, Jackson, for appellees.
Before HAWKINS, P.J., and ROBERTSON and ANDERSON, JJ.
HAWKINS, Presiding Justice, for the Court:
Loretta S. DeFoe has appealed from a summary judgment of the chancery court for the First Judicial District of Hinds County dismissing her complaint against the Great Southern National Bank of Jackson (Great Southern), United Petroleum Corporation and Charles D. Champlin.
DeFoe was beneficiary under a life insurance policy on the life of C. Delbert Hosemann, Sr., assigned by him to Great Southern as collateral security for an indebtedness due it by United Petroleum Corporation. Following Hosemann's death, the bank received the proceeds of the policy which it applied on the debt. Hosemann had also executed a personal guaranty for the debt. DeFoe sought to be subrogated to the bank's position against Champlin, also a guarantor of the debt, United Petroleum Corporation and Hosemann's estate. The chancellor did subrogate DeFoe as against Hosemann's estate (from which there has been no appeal), but dismissed her claim to subrogation against Champlin and United Petroleum Corporation.
We find the chancellor was correct in granting summary judgment in favor of Champlin, but prematurely found in favor of United Petroleum Corporation. DeFoe may very well be entitled to the right of subrogation as against United Petroleum *913 Corporation, the maker of the note. We reverse and remand in part.

FACTS
Charles D. Champlin, a resident of Rankin County, and C. Delbert Hosemann, Sr., a resident of Hinds County, were shareholders in United Petroleum Corporation, an Ohio corporation with principal offices in Jackson. Champlin owned 55% of the outstanding shares, and Hosemann owned 200 shares. The record does not reveal if any other individuals owned stock in the corporation.
On July 30, 1982, United Petroleum borrowed $1,200,000 from the Great Southern National Bank and executed a note in this amount due in six months. United Petroleum also executed a deed of trust covering oil and gas leases and mineral interests in Ohio as security. Champlin and Hosemann each executed a continuing guaranty for $1,200,000 to secure United Petroleum's indebtedness to Great Southern.
Champlin also assigned a $2,000,000 life insurance policy in effect with Transamerican Occidental Life Insurance Company as collateral security for United Petroleum's indebtedness.
On September 23, 1982, the Penn Mutual Life Insurance Company issued a life insurance policy to Hosemann in the face amount of $500,000. The beneficiary was Loretta S. DeFoe, a resident of Jackson, if she survived Hosemann, and if not, a son, William J. DeFoe, and if he failed to survive Hosemann and Loretta S. DeFoe, then to Hosemann's executors and administrators. On January 17, 1983, Hosemann assigned this policy to Great Southern as collateral security for the indebtedness due the bank by United Petroleum.
On July 25, 1983, United Petroleum executed a renewal note to Great Southern in the principal amount of $1,007,455, due January 23, 1984.
Hosemann died September 24, 1983. Great Southern filed a claim as assignee under the insurance policy and on November 17, 1983, Penn Mutual, after making an adjustment because of age discrepancy, paid Great Southern $454,610.83 as payment in full for all sums due under the policy.
On January 13, 1984, Loretta S. DeFoe filed her complaint in the chancery court of the First Judicial District of Hinds County naming as defendants Great Southern, United Petroleum, Champlin and Hosemann's estate.
DeFoe charged Great Southern was required to marshal all the assets of the debtors in seeking payment, but the main thrust of her complaint was that she was entitled to be subrogated to Great Southern's position against United Petroleum, Champlin and Hosemann's estate insofar as the insurance proceeds had reduced United Petroleum's indebtedness.
Following affidavits and pre-trial depositions, all parties filed motions for summary judgment. The chancellor granted a summary judgment in favor of United Petroleum, Champlin and Great Southern, and in favor of DeFoe against Hosemann's estate.
DeFoe appealed. Hosemann's estate filed no appeal.

LAW

I.

DOES DeFOE HAVE ANY RIGHT OF SUBROGATION?
Because she was beneficiary under a life insurance policy assigned as collateral security for United Petroleum's debt, the proceeds of which were applied to the debt of that corporation, is DeFoe entitled to any right of subrogation? If so, is the right of subrogation limited to Great Southern's right of recourse against United Petroleum, or may it also be extended to the bank's right against Champlin?
The right of subrogation of a beneficiary under a life insurance policy is not a question frequently encountered by courts, but its infrequency does not diminish its extreme importance to the parties involved when it does arise.
To answer the first question of this case, we must begin with an understanding of the doctrine of subrogation.
*914 In Robinson v. Sullivan, 102 Miss. 581, 596, 59 So. 846, 847 (1912), this Court stated:
... "Subrogation is the substitution of one person in place of another, whether as a creditor or as the possessor of any rightful claim, so that he who is substituted succeeds to the rights of the other in relation to the debt or claim, and to its rights, remedies, or securities." Words and Phrases, vol. 7, page 6722. "The doctrine is one of equity and benevolence, and, like contribution and other similar equitable rights, was adopted from the civil law, and its basis is the doing of complete, essential, and perfect justice between all the parties, without regard to form, and its object is the prevention of injustice. The right does not necessarily rest on contract or privity, but upon principles of natural equity, and does not depend upon the act of the creditor, but may be independent of him, and also of the debtor." 37 Cyc. 363. As was said by Chief Justice Sharkey in Blackwell v. Davis, 2 How. 812, the doctrine of subrogation is "the offspring of natural justice, and courts should rather incline to extend than to restrict the operation of a principle so elevated and pure." It applies in general, "wherever any person, other than a mere volunteer, pays a debt or demand which in equity or in good conscience should have been satisfied by another . .."
In American Fidelity and Casualty Co. v. U.S. Fidelity and Guaranty Co., 305 F.2d 633 (5th Cir.1962), the Court of Appeals, interpreting Mississippi law, stated that the doctrine of subrogation is "pure equity, founded on principles of natural justice," and "includes every instance in which one who is not a volunteer pays the debt of another. * * * It is applied only when necessary to bring about equitable adjustment of a claim founded on right and natural justice."
In Box v. Early, 181 Miss. 19, 178 So. 793, 796 (1938), this Court stated:
The doctrine of subrogation is one of equity; its object is the prevention of injustice; it rests upon the principle of natural equity; and its basis is the doing of complete and essential justice between the parties without regard to form. Prestridge v. Lazar, 132 Miss. 168, 95 So. 837 ...
See also: Sadler v. Glenn, 190 Miss. 112, 199 So. 305 (1940); First National Bank v. Huff, 441 So.2d 1317, 1319 (Miss. 1983).

II.

RIGHT OF BENEFICIARY
Whenever the question has arisen concerning the right of subrogation of a beneficiary under a life insurance policy, the proceeds of which have been used to apply to a debt as a risk, almost invariably it has involved insurance on the life of the debtor himself, not one secondarily liable as in this case.
This Court has addressed the former situation in Seitz v. Seitz, 238 Miss. 296, 118 So.2d 135 (1960). In that case, Wiley Nash Seitz was a debtor of a bank. To secure his debt he assigned as collateral security an insurance policy on his life in which his mother was a beneficiary. From time to time he renewed the note evidencing the debt, and expressed the intention of paying the debt from proceeds of his crop harvest. Seitz died intestate; his sole heir at law was his widow. The insurance company paid the proceeds of the policy to the bank, completely extinguishing the debt. The mother sued Seitz's estate claiming a right of subrogation against the estate because the proceeds of the life insurance policy had paid Seitz's debt. The Court found in favor of the mother, and we affirmed.
We held a beneficiary is entitled to subrogation to the claim of a creditor against an insured's estate where nothing appeared from the assignment of the policy indicating an intention on the part of the debtor that the insurance proceeds should be the primary source of payment, and that the determining factor was the intention of the insured debtor. We found that Seitz did not intend to make the policy the primary source of payment for his debt, but only as collateral security for his personal obligation, and that the insurance policy was *915 not primarily liable for the debt, but Seitz's estate was.
We further held that the mother's right as a beneficiary was inchoate while Seitz lived, but it became vested at his death, subject only to the collateral liability for the payment of the debt.
It was the view of the chancellor that Seitz controlled in DeFoe's claim for subrogation against Hosemann's estate, and as noted, no appeal has been taken by the estate, and we are not called upon to decide whether the chancery court erred in granted a judgment against this estate. The chancellor did not consider whether the fact that Hosemann was only secondarily liable may have distinguished this case from Seitz.
Seitz announced the majority rule prevailing in the states where this question has arisen. In Smith v. Coleman, 184 Va. 259, 35 S.E.2d 107, 160 A.L.R. 1376 (1945), Heflin collaterally assigned his life insurance policy in which his sister was the beneficiary to secure a note due by him to a bank. Upon his death the assignee bank received the proceeds of the policy and applied them to paying off the note in full. Thereafter, the executor of the estate of his sister (who had also died) sued Heflin's estate to recover the sum paid the bank. This instructive case states some basic principles to which we adhered in Seitz,:
The beneficary, during the life of the insured, had no vested interest in the policy. She had a mere expectancy quite similar to that of a legatee during the life of the testator. However, if no change was made in the policy, upon the death of the insured, the right of the beneficiary became fixed and vested.
The right of the insured to the contract of insurance was absolute. He could have defeated the expectancy of the beneficiary in many ways. He could have exercised the power of appointment and named another beneficiary; he could have surrendered the policy for its then cash value; he could have designated the pledgee, the bank, as beneficiary pro tanto; or he could have made the proceeds of the insurance policy a primary fund out of which to discharge his indebtedness. The insured exercised none of these rights. He simply assigned the policy with other assets owned by him as collateral security to pay an obligation for which he was otherwise primarily bound. "Collateral means secondary or subsidiary. Such security is to be resorted to only in the event that the pledgor fails to perform the principal contract. A pledge as collateral security ex vi termini excludes the idea that the thing pledged is designed as the primary source from which payment is to be made." Barbin v. Moore, 85 NH 362, 159 A 409, 415, 83 ALR 63, 73.
35 S.E.2d at 112.
[T]he cases are practically unanimous in declaring that the intention of the insured is the controlling factor in determing rights of the parties.
Id. at 113.
The principal obligation is the amount owed the Farmers and Merchants State Bank of Fredericksburg, as evidenced by the promissory note executed by Elmer G. Heflin. The life insurance policies were transferred and used as a collateral or secondary means to insure its payment. While the bank had a right to use the collateral in payment of the obligation due it, the exercise of this right did not deprive the beneficiary named in the policy of her right to subrogation as it was her money that was used to discharge an obligation for which the Heflin estate was primarily obligated.
Id. at 113-114. See also, Re Gallagher's Will, 57 N.M. 112, 255 P.2d 317, 37 A.L.R.2d 149, 165-167 (1953), and cases cited under Footnote 89 of 83 C.J.S. Subrogation, § 44.
It is, of course, entirely possible for the owner of the policy by language of the assignment to remove any right to subrogation. Such a case was Kash v. Kash, 260 Ky. 508, 86 S.W.2d 273 (1935). Another case in which it was clear that the insured did not intend for the beneficiary to have any subrogation right against his estate was In re Cohen's Estate, 23 Ill. App.2d 411, 163 N.E.2d 533 (1960).
*916 In Chaplin v. Merchant's National Bank of Aurora, 186 F. Supp. 273 (N.D.Ill. 1959), the court stated:
To defeat the right of a beneficiary it must appear that the insured, by the wording of the instrument assigning the policy or evidencing the loan, or by testamentary disposition, accomplishes such a result.
As we have observed, this is not a case where the owner of the policy assigned it to secure his own debt, but a debt made by another and on which his liability was secondary. Great Southern, under the terms of the note, security agreement, guaranty and the assignment, had the absolute right to receive the proceeds of the policy and apply it to United Petroleum's debt. Does the fact, however, that Hosemann may have only been secondarily liable under the United Petroleum note diminish in some way DeFoe's right of subrogation to the bank's claim against that corporation? To the contrary, it would appear that if there were nothing about the instrument which would have removed a right of subrogation if Hosemann, not United Petroleum, were the primary debtor, then certainly there would be a right of subrogation against United Petroleum.
We have found two cases which address this question of secondary liability, and both held there was a right of subrogation against the primary debtor. In Ulery v. Asphalt Paving Co., Inc., 119 So.2d 432 (Fla.App. 1960), the Florida Court of Appeals upheld a widow's right of subrogation against a corporation in which her husband was president and a shareholder for a bank's debt against the corporation, and for which debt the husband had collaterally assigned a life insurance policy as security. Also, in Falk v. Vreeland Trading Corp., 284 S.C. 201, 325 S.E.2d 333 (App. 1985), the South Carolina Court of Appeals held a widow was entitled to subrogation for a bank's debt against a corporation whose note had been guaranteed by a separate guaranty against the deceased husband, who had also assigned his life insurance policy as collateral security. That court concluded its opinion with the following paragraph:
Finally, the respondents emphasize, as did the master, that the estate is not primarily indebted to the SBA and received no benefit from the payment of the insurance proceeds to the creditor. While we recognize that the issue involved in this case usually arises where a debt of the deceased insured is paid by the assignment of an insurance policy [see Annot., 91 A.L.R.2d 496 (1961)], we regard as irrelevant the fact that the deceased insured was not the primary debtor here. Again, the intention of the insured ordinarily determines whether a beneficiary of a life insurance policy pledged by the insured as security for a debt enjoys a right of subrogation. Seitz v. Seitz, supra; Smith v. Coleman, supra; In re Gallagher's Will, supra.

325 S.E.2d 365-366.
We also adopt the view of the states in which the question has been presented that there is no right of subrogation against a party only secondarily liable, and that the chancellor was correct in rendering summary judgment in favor of Champlin. See Quality Wood Chips, Inc. v. Adolphsen, 636 S.W.2d 94, 97 (Mo. App. 1982); Tschider v. Burtts, 149 N.W.2d 710 (N.D. 1967); Street v. Lincoln National Life Ins. Co., 347 S.W.2d 455 (Mo. App. 1961).
As stated in this last case:
The burden is upon the party seeking subrogation to establish clearly and convincingly that as between himself and another party, the latter, in equity, should bear the loss. Fundamentally, the right of subrogation exists only against the principal debtor and does not extend against a person who is merely secondarily liable.
Id. at 459.
This record is clear that the debt in this case was primarily the debt of United Petroleum. Although the language of the guaranty executed by Champlin (as well as the guaranty executed by Hosemann) may have been broad and inclusive, this does not remove this paramount equitable consideration. This was, after all, United Petroleum's debt.
*917 We therefore reverse and remand this cause for hearing to determine whether DeFoe has any right of subrogation against United Petroleum. The chancellor after a full hearing, and consistent with the views expressed herein, should determine what right of subrogation, if any, DeFoe has against United Petroleum by virtue of the application of the life insurance proceeds to that corporation's debt.

II.

NO INTERFERENCE OF GREAT SOUTHERN'S RIGHT OF COLLECTION[1]
Great Southern was made a party to this appeal and remains a proper party on remand, not however, because of any liability it has to DeFoe, but because of the rights it has as a creditor of United Petroleum. Over half of its debt against United Petroleum remains unpaid, and whatever right of subrogation DeFoe has against United Petroleum cannot impair or diminish Great Southern's absolute right to proceed to collection for the full amount of the debt under the instruments executed by United Petroleum, Champion and Hosemann.
In general, one may not be subrogated to the rights of a creditor unless the debt has been paid in full. See: Continental Bank & Trust Co. v. Alabama General Insurance Co., 274 Ala. 622, 150 So.2d 688 (1963); North Arkansas Milling Co. v. Lipari, 231 Ark. 965, 333 S.W.2d 713 (1960). Although partial subrogation has never been favored by this Court, United States Fid. & Guaranty Co. v. Sunflower County, 194 Miss. 680 12 So.2d 142 (1943), we note that pro tanto subrogation has been allowed in certain situations, not, however, to the prejudice of the original creditor whose debt has not been fully paid. See, e.g., Continental Bank & Trust Co., supra, 150 So.2d at 691; Ulery v. Asphalt Paving Co., supra, at 437; United States Fid. & Guar. Co. v. Maryland Cas. Co., 186 Kan. 637, 352 P.2d 70, 76 (1960). Therefore, upon remand if the chancery court does find DeFoe has a right of subrogation against United Petroleum, the decree should be framed in such a manner that Great Southern's right to collect its debt in full is not impaired.
AFFIRMED IN PART; REVERSED AND REMANDED IN PART FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.
WALKER, C.J., ROY NOBLE LEE, P.J., and DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN, ANDERSON, and GRIFFIN, JJ., concur.
NOTES
[1] This question was not specifically addressed by counsel for Great Southern in its reply brief, but we address it to avoid any possible error on remand as to the banks' unfettered right to recover its debt in full.